| 97 | 701 |
| 103 | 240 |

## Richmond.

### CADY v. STRAUS.

#### DECEMBER 7, 1899.

1. CONTRACTS—*Attorney to Collect—Offer to Sell at Discount—Withdrawal Offer.*—If an attorney to collect a claim accept a proposition to purchase it at a discount, subject to the approval of his client, such acceptance is merely an undertaking to communicate the proposition to the client, and the proposition may be withdrawn at any time before acceptance by him.
2. CONTRACTS—*Mutuality—Offer—Withdrawal.*—Mutuality of obligation is of the essence of a contract, and it is binding upon neither party until a point is reached where the minds of the parties accede to one and the same set of terms. A mere offer may be withdrawn at any time before acceptance.

Error to a judgment of the Law and Equity Court of the city of Richmond, rendered June 7, 1898, in a proceeding by motion for a judgment, wherein the plaintiff in error was the plaintiff, and the defendant in error was the defendant. The object of the motion was to recover the difference between sixty *per cent.* of a debt which it is alleged the defendant in error agreed to pay, and the amount of a dividend of forty *per cent.* on said debt, paid in the chancery suit mentioned in the opinion of the court.

*Affirmed.*

The opinion states the case.

*James Lyons, B. T. Crump, Henry & Williams,* and *H. C. Riely,* for the plaintiff in error.

*Charles U. Williams* and *Coke, & Pickrell,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

Lee Straus, a wholesale shoe dealer in the city of Richmond, made an assignment for the benefit of his creditors, in which he established certain preferences in favor of individuals named, and his general merchandise creditors, amounting in the aggregate to about $33,000, instituted a suit to have the deed declared fraudulent and void, as to them, in the Chancery Court of the city of Richmond. On February 23, 1897, the judge of the Chancery Court notified counsel that, in his opinion, plaintiff had failed to establish the charge of fraud, and the deed was therefore upheld, but the decree in the cause was not entered until the 14th day of April.

On the 25th of February, 1897, Mr. Charles U. Williams, attorney for Charles Straus, a brother of Lee Straus, addressed the following note to Mr. James Lyons: " Mr. Charles Straus authorizes me to offer for the claims represented by Messrs. Munford, Crump, and yourself to be assigned to him, or some one for him. That the preferred creditors and all costs shall be paid at once out of fund in bank to credit of the court, and the balance divided among the general creditors. After this is done, and the dividend credited on your, Crump's, and Munford's claims he will pay ten *per cent.* of the whole principal of your claims, in addition to such dividend.

" The Manchester lot and Lee Straus's interest in the estate not to be sold except, at his instance, as assignee. *This proposition to be good only for to-day.*

" I have been trying to see Crump all day, but have been unable to see him. I learn that he may be with you. If not, communicate with him and Munford, and send word to my house of decision."

This note was replied to upon the same day by Mr. Lyons in a letter addressed to Mr. Charles Straus, which is as follows: " Your counsel, Mr. Charles U. Williams, Mr. Bev. T. Crump, Mr. B. B. Munford, and myself have just had a long conference in regard to your proposition for an assignment to you, or some one for you, of the claims of our clients against your brother, Mr. Lee Straus, and we have finally agreed that, if you will pay sixty *per cent.* (60) of the face of the claims of our clients, then your offer shall be accepted, and we will secure for you the necessary assignments of all the claims of the creditors represented by us as soon as the money is paid, and the papers can be drawn and executed.

" This letter is written to you by us at the request of your counsel, Mr. Charles U. Williams, and we are now, at his request, awaiting your reply at my house. If you decide to accept our terms, you can simply write the word ' accepted ' at the foot of this letter, sign your name, and return it to us by the bearer.

" This agreement, of course, is subject to our clients' approval, but we believe they will promptly carry it out."

This letter was concurred in, as shown by their endorsement, by B. T. Crump and Staples & Munford representing other creditors of Lee Straus.

On the same day, and in reply to the foregoing letter, Charles Straus wrote as follows:

" Messrs. B. T. Crump, Staples & Munford, and Mr. James Lyons: ' I will accept the propositon to pay sixty *per cent.* of the *face value,* without interest, of *all* claims you represent on the presentation of said assignments of claims drawn in proper form.

" CHARLES STRAUS."

Munford, Crump, and Lyons immediately notified their clients of the foregoing facts, and Messrs. Staples & Munford and

Crump received from their clients letters accepting the proposals submitted to them.

On March 15, 1897, the following note was addressed to Messrs. Lyons, Munford, and Crump, attorneys for the creditors of Lee Straus: " Gentlemen: Not having heard from you relative to my proposition of February 25th, I herewith withdraw said proposal for an assignment of claims." (Signed) " Charles Straus." To this letter Mr. Crump replied as follows:

" Yours addressed to Mr. Lyons, Mr. Munford, and myself concerning the purchase of claims against Lee Straus has been handed to me. On the 24th of February we received a proposition from you through Mr. Charles U. Williams, which we declined on behalf of our clients. We then on the 25th made you a proposition to sell you the claims at sixty *per cent.*, subject to the approval of our clients, which you accepted. We at once communicated with our clients, and those represented by me approved my action, which approval I communicated to Mr. Williams last week. Mr. Lyons is absent from the city, and I learn that all of his clients have not yet signified their approval of our agreement, but, upon receiving all information desired by them, they will doubtless act without delay."

On the 16th of March, 1897, Mr. Williams, as attorney for Charles Straus, wrote to Mr. James Lyons, attorney for the petitioner, as follows: " I have been waiting since the 5th of March, when you expected to be back, to take up with you the Straus case. Bev. Crump notified me yesterday that all of the creditors except your clients had accepted Mr. Straus' proposition, but that he had received a letter from Mr. Straus addressed to you, Mr. Munford, and himself withdrawing his proposition, I suppose because he thought an unreasonable time had elapsed without his hearing from you. If you cannot run down here for a day, can you not authorize Mr. Campbell or Mr. Henry to act for you? If so, I will endeavor to get Mr. Straus to renew

his offer, and let a consent decree be entered carrying out the settlement.

"The withdrawal by Mr. Straus of his offer was without my knowledge or advice."

By March 29, 1897, all the creditors included in the correspondence of February 25, 1897, had accepted the proposal therein set forth, and had so informed counsel for Charles Straus. It is conceded, however, that the creditors represented by Mr. James Lyons, one of whom was the plaintiff in error, did not accept until after the letter of March 15, 1897, addressed by Straus to the attorneys for the creditors of his brother in which he withdrew his proposal for the assignment of their claims.

The creditors of Lee Straus contend that the correspondence between Charles Straus and their attorneys shows a binding contract upon the part of Charles Straus to pay sixty *per cent.* of the face value of their claims against his brother. It is conceded that the attorneys had no power to bind their principals by this contract, but the contention of plaintiff in error is that, having assumed without authority to make a contract, and that contract having been subsequently ratified by their principals, the ratification relates back to its date of February 25, 1897, and makes it valid and binding upon Charles Straus, notwithstanding the fact that he withdrew his proposal before plaintiff in error had ratified and confirmed it.

Upon the part of the defendant, it is contended that such a contract, if entered into by an unauthorized agent, would be subject to revocation by Charles Straus prior to its ratification by the principal, even in a case where the agent had undertaken by his unauthorized contract to bind the principal; but, secondly, it is contended that it is unnecessary to consider that question, because the correspondence does not disclose an intention on the part of the attorneys for the creditors to make a contract for their principals, but that all they undertook to do was to receive and transmit the offer of Charles Straus to their principals, and

that, inasmuch as the object of Charles Straus was to acquire by assignment all the outstanding demands against his brother represented by Lyons, Munford, and Crump, the failure of Cady to ratify the proposal before it was withdrawn, serves not only to defeat his claim, but is fatal to the demands of those creditors who had in terms accepted the offer prior to its withdrawal on March 15, 1897, his offer being for all, and not a part, of the claims against his brother.

The creditors having gone into the chancery suit and secured their *pro rata* in the fund for distribution, this suit was instituted by Cady to recover the difference between the sum thus paid to him out of the assets of Lee Straus, and the sixty *per cent.* which it is claimed Charles Straus bound himself to pay. A judgment was entered for the defendant, and, upon a writ of error to that judgment, the only question presented is that which we have already stated.

Is Charles Straus bound by his proposal set forth in the correspondence of February 25, 1897? We are of opinion that he is not. The negotiation opened with an offer from Charles Straus to pay ten *per cent.* upon the principal of the claims represented by counsel in addition to the dividend which would be received by the general creditors under the deed of assignment. Counsel for the creditors replied: "If you will pay sixty *per cent.* of the claims of our clients your offer shall be accepted, and we will secure for you all necessary assignments of all the claims of the creditors represented by us, as soon as the money is paid and the papers can be drawn and executed  *  *  *  * This agreement, of course, is subject to our clients' approval, but we believe that they will promptly carry it out." This seems to us to be a mere offer to submit a proposition to their clients in lieu of the proposal made by Straus to them. The agents did not undertake to bind their principals by their agreement. It is in its essence a mere undertaking to transmit to their principals an offer which they had no authority to accept. Had they tran-

scended their authority and undertaken to bind their principals by a contract beyond the scope of their employment, and that act had subsequently been ratified by their principals, it would have presented a question of much difficulty, and one upon which the authorities seem to be divided. It is plain, however, that if the attorneys merely undertook to transmit to their clients the proposition which was to bind no one until accepted, then the letter of Straus dated March 15, 1897, was effectual to release him from all liability.

Mutuality of obligation is of the essence of a contract, and it is binding upon neither party until a point is reached where the minds of the parties to it accede to one and the same set of terms. That an offer may be withdrawn at any time before its acceptance is settled law, and is, we think, not disputed. Since an offer unaccepted creates no rights, and is not binding upon the party making it, it follows that it may be revoked at any time before acceptance. See Clark on Contracts, p. 47, and numerous authorities there cited.

What we have said sufficiently disposes of the case of plaintiff in error, and we are not disposed to pass upon questions affecting those not parties to the record.

We are of opinion that there is no error in the judgment complained of, and it is affirmed.

*Affirmed.*