### Staunton.

CENTRAL LAND CO. OF BUCHANAN *v.* JOHNSTON.

SEPTEMBER 23, 1897.

1. STATUTE OF FRAUDS—*Memorandum—Resolution of Directors of a Cor-
   poration Duly Signed.*—A resolution of a board of directors of a cor-
   poration duly signed by its president and secretary, which suffi-
   ciently sets forth the terms of the contract, is a compliance with
   the statute of frauds as to contracts for the sale of real estate.

2. SPECIFIC PERFORMANCE—*Sale of Real Estate—Contract Signed Only by
   Party to be Charged.*—Specific performance of a contract for the
   sale of real estate will be decreed against the party who signed the
   contract, although the other party did not sign, and there was no
   mutuality of remedies between the parties at the time the contract
   was made. The filing of the bill by the other party for specific per-
   formance makes the remedy and the obligation of the contract
   mutual.

3. SPECIFIC PERFORMANCE—*Contract for Sale of Real Estate—Case in
   Judgment.*—Under the terms of the contract in suit appellant con-
   tracted to purchase the land in controversy of the appellee at the
   price of $2,500, if a suit mentioned in the contract "goes in his
   favor." The suit was decided against him in the Circuit Court,
   but that decree, on appeal, was reversed by this court.

Held:    The appellant must take the land and pay the price agreed, with
   interest from the date of the decree of reversal. This right of the
   appellee could not be taken away nor abridged by notice from
   the appellant that it would not be responsible for costs, which it
   had contracted to pay, after the decree in the Circuit Court. Nor
   can the rights of appellee be affected by the depreciation in value
   of the land before the final termination of said suit.

Appeal from a decree of the Circuit Court of Botetourt
county, pronounced May 28, 1896, in a suit in chancery wherein

the appellee was the complainant, and the appellant was the defendant.

*Amended and affirmed.*

The opinion states the case.

*Benjamin Haden* and *Cocke & Glasgow,* for the appellant.

*E. M. Pendleton,* for the appellee.

HARRISON, J., delivered the opinion of the court.

This suit was brought by the appellee, A. Nash Johnston, to enforce the specific performance of a contract for the sale of certain land, made by him to the appellant, the Central Land Company, through its agent, William Jolliffe. The written evidence to support this contract is the following memorandum or note thereof in the shape of a resolution of the board of directors of the company which was duly entered upon the minutes.

"On motion of Mr. Weeks, that the board approve the action of Major Jolliffe in the Graybill land matter, and agree to protect Dr. A. N. Johnston in the suit instituted against him, to pay the costs of same if it goes against him, and to purchase the land from him for $2,500, if it goes in his favor." This minute was signed by the president and secretary of the appellant company.

In explanation of this resolution, it appears that appellee had bought this land from Lewis H. Graybill and wife, and that, at the time of the transaction under consideration, a suit had been brought against appellee and the Graybills by one E. J. Brugh, who claimed the land under an option given him thereon prior to the sale to appellee. See the case of *Graybill* v. *Brugh,* 89 Va. 895. This was the suit, then pending in the Circuit Court of Botetourt county, which is referred to in the resolution.

That the resolution of a board of directors duly signed by its

president and secretary, which sufficiently sets forth the terms of a contract, is a compliance with the statute of frauds we do not understand to be questioned. See Cook on Stocks and Stockholders, sec. 714, and cases there cited.

The first error assigned is that the contract evidenced by this resolution is not mutual, that not being signed by appellee it could not be enforced against him, and therefore appellee should not be allowed to enforce it in a court of equity against appellant.

There are unquestionably strong reasons that can, and have been assigned in support of this proposition, but the doctrine in this country and England is now firmly settled by an overwhelming weight of authority that specific performance will be decreed against the party who signed the contract, although the other party did not sign, and although there is no mutuality of remedies between the parties at the time the contract is made.

In Browne on the Statute of Frauds, sec. 366, it is said: "It has been seriously doubted by a very eminent judge, whether an agreement, of which the memorandum was signed by one party only, should be enforced against the other in a court of equity; upon the ground that, if so, it would follow that the court would decree a specific performance, when the party called upon to perform might be in this situation, that if the agreement was disadvantageous to him, he would be liable to the performance, and yet if advantageous to him, he could not compel a performance. Notwithstanding this doubt, however, the rule is firmly settled that in equity for obtaining a specific execution, as well as at law for recovering damages, the signature of the party who makes the engagement is all that the statute requires; and this is put upon the ground, in addition to the unqualified language of the statute itself, that the plaintiff by his act of filing the bill has made the remedy mutual. Mr. Pomeroy, in his work on Contracts, sec. 170, says: "The second general exception to the requirement of mutuality includes all those agreements which, by the provisions of the statute of

frauds, must be in writing, and which, in conformity with the overwhelming weight of judicial authority, need only to be signed by the party to be charged, that is, by the defendant in the suit brought upon the contract. It follows, therefore, that the plaintiff who has not signed the memorandum, may enforce a specific performance, although no relief could be obtained against him in respect of the promises made therein on his part."

Mr. Minor says: "It is not necessary that the writing should be signed by both parties. It is enough if it be signed by the party to be charged. Nor does this doctrine conflict, as Lord Redesdale supposed in *Lawrenson* v. *Butler*, 1 Sch. & Lefr. 13, with the principle that in every contract there must be mutuality of obligation, for the statute determines nothing as to the obligation of the contract, but only forbids any action to be brought thereon, unless the contract be in writing, &c.; and, moreover, when the other party institutes proceedings upon the contract he thereby in writing consents to it." 2 Minor's Inst., marg. p. 769.

In Virginia, while there have been expressions indicating a tendency of the judicial mind to the view that the contract must be signed by both parties, as in *Hoover* v. *Calhoun*, 16 Gratt. 112, the question has remained an open one up to this time, with the exception of the case of *Wood* v. *Dickey*, 90 Va. 160, which is now relied on in support of the contention of appellant. In that case a rehearing was allowed, and, pending the rehearing, the case was settled and dismissed without a final decision. It cannot therefore be accepted as controlling authority in this case. Regarding the question, therefore, as still an open one in this State, the court is of opinion that it was not necessary for the contract, under consideration, to be signed by appellee to entitle him to its specific performance in equity. It was sufficient that it was signed by appellant, the party to be charged thereby; that when appellee instituted his suit to enforce specific performance of the contract he thereby in writing

consented to it, and made the remedy as well as the obligation mutual.

It is further contended by appellant that the contract should not be enforced because the company, by the written memorandum, only contemplated the litigation of the title in the Circuit Court; that the land was bought for purposes of speculation, and it was therefore important, if appellant was to become the owner, that it should be in a reasonable time; that the delay until the final decision of the case by this court, in consequence of the collapse in the spirit of speculation, had left the land without value to any one except for farming purposes; and that, after the decree of the Circuit Court, appellant had, through its attorney, notified appellee in writing that it would not be further liable for any costs, charges, or liabilities about the suit.

There is nothing in the language of the resolution adopted by the company as the written evidence of its contract to justify the contention that its liability was limited to the time the litigation lasted in the Circuit Court. E. J. Brugh was claiming the land of the Graybills at $1,200. Appellee had agreed to pay them $2,000 for it. When, therefore, the Circuit Court decided that Brugh had the better right, the Graybills at once took an appeal from that decision which resulted in its reversal, and in establishing the title of appellee, and fixing his liability to pay $2,000, the purchase price agreed upon by him. The resolution of the company is a plain, unambiguous agreement to protect appellee in the suit instituted against him, without limitation upon the right of the parties to have the decision of the lower court reviewed by this court, and that right could not be taken away or abridged by the notice given by the company, through its attorney, that it would incur no liability subsequent to the decree of the Circuit Court. Nor can the fact that the property lost its value to appellant before the suit involving the title was finally settled, affect the rights of appellee. He was in no way responsible for that result, and cannot be made answerable therefor.

It is further contended that the relief prayed for in the bill cannot be granted, because the contract there set up is different from that claimed to have been proved. It is insisted that the only contract which can bind the company is set forth in the resolution of its board of directors; that, under the terms therein set forth, the purchase price, $2,500, was to be paid in cash, whereas the bill asks that the company be required to pay $666.00 in cash, to assume two notes in favor of Mrs. Graybill for $666.66 each, and to pay appellee his profit on the sale of $500. The bill expressly alleges that the company purchased the land upon the terms of the resolution. It does further allege that the purchase price was to be discharged by paying to Mrs. Graybill the amount due her on the land, and paying the balance to appellee. If it had appeared that any part of the purchase money was due to a third person, the court would have ordered it to be paid to that person, without alleging the fact that it was so due. In its answer to the bill appellant admits that Mrs. Graybill owned the land, that appellee bought from her, and admits that the resolution was adopted, but insists that it was done at a time when the land would have been valuable to it, and was in anticipation of its being acquired in a short time. Under the terms of the resolution the time did not arrive when appellee could demand payment of the purchase money until the title was finally settled by the decree of this court. At that time the Graybill purchase money was due and payable, and the decree of the lower court directs to whom the purchase money due from the company shall be paid in cash. It sufficiently appears that the company understood that appellee had bought the land from Mrs. Graybill, and expected and intended to pay the amount due her, and pay appellee the balance. The resolution recognizes the existence of Mrs. Graybill's interest in these words: "that the board approve the action of Major Jolliffe *in the Graybill land matter,* and agree to protect Dr. A. N. Johnston in the suit instituted against him." The Company must have known all about the character of the suit they

were obligating themselves to protect Dr. Johnston in. A reference to that suit discloses the fact that they were buying the land upon which the purchase money due to Mrs. Graybill was outstanding. That the company knew that part of its agreed purchase money would go to Mrs. Graybill in discharge of her debt against the land, and that it was the understanding, under the resolution, that it would protect appellee against that purchase money, further appears from a receipt given by appellee to the company for $718.64, which describes said amount "as this sum paid by him to Mrs. Graybill on account of tract of land." It can hardly be presumed that the company when they made this payment did not know that it was in discharge of the first payment due Mrs. Graybill on the land; that there were two other payments due her; and that they were paying it in pursuance of their contract to protect appellee in the suit then pending against him.

The Circuit Court referred the cause to a commissioner to ascertain and report an account of the rents of the land, since the date of the contract sought to be enforced, and any other matter deemed pertinent, or required to be stated by any party in interest. After due notice to all parties, the commissioner ascertained that, after crediting Mrs. Graybill with taxes paid, and charging her with the use of the land, there was a balance due her of $1,592.09, with interest on $1,333.34, from May 1, 1896. This result was reached by allowing interest on the debt from March 22, 1890, the date of Mrs. Graybill's sale to appellee. The commissioner further ascertained that there was due appellee, after the payment of Mrs. Graybill's debt, the sum of $500, with interest from April 14, 1890, the date of appellee's sale to the company. This report was confirmed, and the decree of the court is in accordance with its findings.

The decree correctly ascertains the amount due Mrs. Graybill; but it is erroneous in ascertaining the amount due the appellee, A. Nash Johnston. Under the terms of the resolution the land was to be paid for at the price of $2,500 if the suit involv-

ing the title was decided in favor of said Johnston. In ascertaining, therefore, the sum due appellee the principal sum of $2,500 should bear interest from April 20, 1893, the date of the final decree of this court in the case of *Graybill al.* v. *Brugh,* and that amount credited by such sums as appellant may appear to be entitled to, and the residue decreed in favor of A. Nash Johnston.

The decree appealed from must be amended in this respect, and the cause will be remanded for that purpose, and thus amended it must be affirmed.

*Amended and affirmed.*