# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## CUMMINS AND ANOTHER v. BEAVERS AND OTHERS.

### November 23, 1904.

1. OPTIONS—*Speculation—Fraud.*—The mere fact that an option is taken for the purpose of speculation does not constitute fraud or unfair dealing on the part of the person taking the option.

2. OPTIONS—*Valuable Consideration—Specific Performance—Mutuality.*— An option contract for the sale of land, founded on a nominal consideration. will be specifically enforced in equity against the party signing it, though. not signed by the other party. The institution of a suit for its enforcement by the other party is a sufficient consent in writing to it, and makes the remedy as well as the right mutual.

3. OPTIONS—*Consideration—Revocation.*—An option given without consideration may be withdrawn at any time before acceptance, upon giving notice to the other party thereto, but when founded upon a valuable consideration it cannot be withdrawn before the expiration of the time specified therein. Although the consideration be not paid at the date of the option, but at a later date while the option is still current, the option may be enforced.

4. CONTRACTS—*Time of Performance—Parol Extension—Consideration— Revocation.*—As a general rule the time of performance of a written agreement may be extended by parol, but to be binding it must be supported by some new and sufficient consideration. An option extended without any new consideration is revocable at any time before acceptance. ·

5. PURCHASER—*Notice of Prior Option—Case in Judgment.*—A person who takes a conveyance of the legal title to land, with knowledge that his grantor has agreed to sell to another person, takes it subject to the equitable estate already vested in the purchaser. In the case in judgment, the grantee took his conveyance with full

notice, actual and constructive, that the appellee had a valid contract with his vendor 'which he could enforce in a court of equity, and he therefore took subject to that contract.

Appeal from a decree of the Circuit Court of Tazewell county, pronounced in a suit in chancery, wherein the appellee, Beavers, was the complainant, and the appellants and others were the defendants.

*Affirmed.*

The opinion states the case.

*Henry & Graham,* for the appellants.

*H. C. Alderson* and *Chapman & Gillespie,* for the appellees.

CARDWELL, J., delivered the opinion of the court.

In May, 1901, E. Barnett and wife executed to Stephen Effler a contract known as an option, by which they gave to Effler or his assigns the exclusive right, until the 10th day of November, 1901, to purchase a certain tract of land therein described as lying in McDowell county, West Virginia, at the price of $22.50 per acre. This option was, on the 13th day of August, 1901, assigned by Effler, for a valuable consideration, to A. Cummins.

On the 3d day of September, 1901, during the existence of the Effler option, then held by Cummins, Barnett and wife executed to one James M. Beavers an option contract on the same tract of land, by which they gave to Beavers the exclusive right to purchase the land at any time within forty-five days from the 11th day of November, 1901, at the same price per acre named in the Effler option, provided the land was not taken under the Effler option. This contract to Beavers, under seal, purports to have been executed for the consideration of one

dollar, which was not paid, however, on the day of the execution of the contract, but was paid by Beavers on the 13th day of November, 1901, at which time the contract was acknowledged by Barnett and wife before a notary public.

Up to the 11th day of November, 1901, Cummins had failed to exercise the Effler option, and on that day Barnett went to Cummins' place of business in the town of Tazewell, and called his attention to the fact that the Effler option had expired the day before (which was Sunday), and asked Cummins if he was going to take the land, at the same time offering him data by which the deed, as Barnett thought, might be prepared, and upon Cummins positively stating that he would not take the land at the price named in the option, as he considered the price too high, Barnett asked for the Effler option, which Cummins refused to surrender. After some discussion of the matter, Cummins said he would like to have two weeks to investigate the land; that he hadn't had time to do so, and that if Barnett would give him two weeks, if he did not take the land on that day two weeks, he would give up the contract he held. To this Barnett replied, "I will be back this day two weeks," having previously said to Cummins that he could not get the land for less than the price named.

On the 13th of November, 1901, two days after the conversation between Barnett and Cummins at the office of the latter, Barnett and wife acknowledged the Beavers option before a notary public, as above stated, and thereupon Barnett signed and delivered to Beavers a written notice to Cummins, as follows:

"You are hereby notified that I have made arrangements for the sale of my land, so you will please deliver to Mr. James Beavers the John Effler option which expired on November 10, 1901, and which you still hold."

This notice was delivered to Cummins on the 13th day of

November, 1901, by Beavers, who then also notified Cummins of his option contract; that it took effect on the 11th day of November, 1901, and that he had sent the contract to the clerk of the County Court for recordation. Cummins again refused to surrender the Effler option, and refused to permit Beavers to see and examine it, and three days thereafter, to-wit, on the 16th day of November, 1901, gave Barnett notice that he had elected to purchase the land under the Effler option, upon the terms therein stated. This notice from Cummins was delivered to Barnett on the 19th or 20th of November, and on the 23d of November, before Cummins had received a deed from Barnett and wife, or had incurred any expense in furtherance of a purpose to take the land, Beavers addressed a letter to Cummins and again notified him of his contract.

On the 20th of December following, Cummins instituted a chancery suit in the Circuit Court of Tazewell county against Barnett and wife, Effler, and Beavers, seeking to obtain title to the land in question, alleging that there had been a parol extension of the Effler option, and that since he had given Barnett notice that he would take the land referred to, he had been informed that Beavers had persuaded Barnett to give him an option on the land, and praying that Beavers be injoined from any further attempt to carry out his contract. This bill was dismissed by Cummins before there was any appearance by the defendants.

On the 25th day of December, 1901, Beavers gave Barnett and wife verbal notice that he would take their land under his option, and on the day following, which was within forty-five days from November 11th next preceding, he gave them written notice of such election; that he was ready to comply with his contract, and made them a legal tender of the cash payment in accordance with the terms of the contract, which Barnett declined to receive.

On the 30th day of December, 1901, Barnett and wife, at the instance of Cummins, conveyed the land in question to the Faraday Coal & Coke Company, having at that time or previously obtained from Cummins a contract binding himself to bear all costs and expenses of any suit brought to vacate that deed, and giving Barnett the right to refund, without interest, the purchase money for the land which the grantee then paid, in the event the deed should be set aside.

At the February rules, 1902, this suit was instituted by Beavers against Barnett and wife, Cummins, and the Faraday Coal & Coke Company, for the specific execution of his contract with Barnett and wife, and to vacate the deed to the Faraday Coal & Coke Company, and to compel the defendants to convey title to the land to him, alleging a continued readiness to perform the contract fully on his part. Cummins and the Faraday Coal & Coke Company answered the bill, denying the right of the complainant to specific performance, on the ground that the contract sought to be enforced was unilateral and could not be enforced for want of mutuality, and that there had been a parol extension of the Effler option, within which extension Cummins had accepted the terms of the option.

Upon the hearing of the cause on the pleadings, the exhibit therewith and depositions taken on behalf of the parties, the Circuit Court, by its decree, granted the relief prayed for in the bill, and from this decree Cummins and the Faraday Coal & Coke Company obtained an appeal to this court.

It will be observed from the foregoing state of facts that Cummins had an unilateral contract, or option, which, by its terms, expired on the 10th of November, 1901, and the appellee, Beavers, had a similar contract, running forty-five days from the 11th of November, 1901. The first contention of appellants is that appellee's contract, being a unilateral one, and without a consideration to support it, cannot be enforced in a court of equity for want of mutuality.

Appellee's contract expressly states a consideration of one dollar, and whether the one dollar was paid at the time the contract was signed by Barnett and wife or not, it was in fact paid when they acknowledged the contract for recordation on November 13, 1901, and, therefore, if the contract under which the appellants claim in fact expired on the 11th day of November (the 10th being Sunday), it can make no difference whether the consideration stated in appellee's contract was paid on the 13th of November, or prior.

There is some evidence that appellee's option was not taken in good faith, but was intended as a "sham" to force Cummins to take the land, and that appellee agreed verbally on November 13th to pay the Barnetts a $4,000 cash payment on the day of acceptance, instead of $500, as provided by the terms of the option, and for that reason it should not be enforced in a court of equity; but, as the learned judge of the Circuit Court, in his written opinion made a part of the record, says, there is nothing in the pleadings directly raising such issues. Conceding, however, that these issues are made by the pleadings, clearly evidence tending to show an oral agreement altering the terms of the written contract was inadmissible, and it was expected to, and we do not find in the evidence support of the contention that there was a lack of good faith on the part of the appellee in the transaction between him and the Barnetts. The mere fact that his purpose in taking the contract was speculation— that is, for the purpose of making a profit out of the transaction—does not constitute fraud or unfair dealing, as this is usually the purpose in purchasing property, and was doubtless the object had in view by the appellants.

That unilateral or option contracts may be enforced in a court of equity is settled by the decision of this court in *Central Land Co.* v. *Johnson,* 95 Va. 223, 28 S. E. 175, where the opinion by Judge Harrison says: "The first error assigned is

that the contract evidenced by this resolution is not mutual, that not being signed by appellee it could not be enforced against him, and therefore appellee should not be allowed to enforce it in a court of equity against appellant. There are unquestionably strong reasons that can, and have been, assigned in support of this proposition, but the doctrine in this country and in England is now firmly settled by an overwhelming weight of authority that specific performance will be decreed against the party who signed the contract, although the other party did not sign, and although there is no mutuality of remedies between the parties at the time the contract was made." And further the opinion says: "In Virginia, while there have been expressions indicating a tendency of the judicial mind to the view that the contract must be signed by both parties, as in *Hoover* v. *Calhoun*, 16 Gratt. 112, the question has remained an open one up to this time, with the exception of *Woods* v. *Dickey*, 90 Va. 160, 17 S. E. 880, which is now relied on to support the contention of appellant. In that case a rehearing was allowed, and, pending the rehearing, the case was settled and dismissed without a final decision. It cannot therefore be accepted as controlling authority in this case.

"Regarding the question, therefore, as still an open one in this State, the court is of opinion that it was not necessary for the contract under consideration to be signed by the appellee to entitle him to its specific performance in equity.

"It was sufficient that it was signed by appellant, the party to be charged thereby; that when appellee instituted his suit to enforce specific performance of the contract, he thereby in writing consented to it, and made the remedy as well as the obligation mutual.."

The case of *Graybill* v. *Brugh*, 89 Va. 895, 17 S. E. 558, 21 L. R. A. 133, 37 Am. St. 894, is relied on by appellants, but in that case it is expressly stated that the consideration named in

the option was never paid, and if there is anything in the opinion which supports appellants' contention, it is at variance with the latest expression of this court in *Central Land Co.* v. *Johnson, supra,* and the latter must control. In point of fact, however, the cases are wholly unlike, and the latter case is directly in point in the consideration of the case in hand, and is in strict accordance with the great weight of authority found in text-books and the decided cases. 2 Minor's Inst., 769. *Peay* v. *Seigler* (S. C.), 26 S. E. 885, 59 Am. St. Rep. 731; *Peevey* v. *Haughton* (Miss.), 17 South. 378, 18 South. 357, 48 Am. St. Rep. 592; *Bradford* v. *Parkhurst* (Cal.), 13 Pac. 1106, 31 Am. St. Rep. 189; *Yerkes* v. *Richard* (Pa.), 26 Atl. 221, 34 Am. St. Rep. 721; *People's St. Ry. Co.* v. *Spencer* (Pa.), 27 Atl. 113, 36 Am. St. Rep. 22; Warville on Vendors (2d Ed.), par. 125; Pom. on Contr., 235; *Litz* v. *Goosling* (Ky.), 19 S. W. 527, 21 L. R. A. 127; Clark on Contr., 168-69; *Watts* v. *Keller*, 56 Fed. Rep. 1, 5 C. C. A. 394; *Mathews' Slate Co.* v. *New Emp. S. Co.* (C. C.), 122 Fed. Rep. 972; *Black* v. *Maddox* (Ga.), 30 S. E. 723; *Mansfield* v. *Hodgdon*, 147 Mass. 304, 17 N. E. 544; *Weaver* v. *Burr*, 31 W. Va. 743, 8 S. E. 743, 3 L. R. A. 94; *Dyer* v. *Duffy*, 39 W. Va. 148, 19 S. E. 540, 24 L. R. A. 339; *Guyer* v. *Warren* (Ill.), 51 N. E. 581.

The distinction between an option given without a consideration and an option given for a valuable consideration is that in the first case it is simply an offer to sell and can be withdrawn at any time before acceptance, upon notice to the vendee, but in the second, where a consideration is paid for the option, it cannot be withdrawn by the vendor before the expiration of the time specified in the option. *Ide* v. *Leister* (Mont.), 24 Pac. 695, 24 Am. St. Rep. 19.

Again, conceding that the consideration for appellee's option was not paid until November 13, 1901, we are nevertheless of opinion that the option was a valid contract, binding upon the

Barnetts for forty-five days from the 11th of November, and could not be withdrawn by the Barnetts before the expiration of the time specified, and gave the appellee priority of right to purchase the land in question over the right of Cummins under the Effler option, unless there was a valid extension of the latter's option for two weeks from the 11th day of November, within which time Cummins notified Barnett of his purpose to take the land.

Appellant, Cummins, practically concedes that the Effler option, under which he claims, expired on the 11th of November, when he insists that by parol agreement with Barnett on that day an extension of two weeks was given him, and that, he having accepted within that time, his equity is superior to appellee's equity under his option, to call for the legal title. The decision of this case, therefore, turns upon whether this alleged extension of the Effler option was valid under the statute of frauds.

Clearly there was no valuable consideration paid for this extension. Up to that time Cummins had done nothing requiring any outlay of expenditure, indicating his purpose to take the Barnett land. As a general rule the time for the performance of a written agreement may be extended by parol, and an extension of such written agreement may be shown when supported by some new and sufficient consideration. Brown on Stat. of Frauds, par. 411, *et seq.* Bish. on Con., par. 771. Fry on Spec. Perf., par. 777.

But was there in fact any extension or attempted extension of the Effler option agreed on between Barnett and Cummins on the 11th of November. The evidence wholly fails to show that there was. On the contrary it appears that Cummins on that day said to Barnett that he would not take the land at the price stated in the Effler option; whereupon Barnett informed him that he would not get it at a less price. Cummins then

merely said to Barnett that he would like to have two weeks within which to look over the land; that he hadn't had time to investigate it, and if Barnett would give him two weeks and he didn't take the land at the end of the two weeks, he would then give up the Effler option; to which Barnett replied, "I will come back this day two weeks," and left Cummins' office. If this can be considered as an extension of the Effler option for two weeks, it was but a parol extension, without a consideration, and clearly Barnett had the right to withdraw it at any time before its acceptance by Cummins. That it was withdrawn on the 13th day of November, two days thereafter, there is not the least doubt. On that day, as we have seen, Barnett notified Cummins in writing that he had made arrangements to sell his land, and directed him to surrender the Effler option to the bearer of this written notice, who was the appellee, Beavers; and was also at that time informed that Beavers was the man to whom Barnett had agreed to sell his land. So that, before Cummins took any step whatever towards accepting the terms of the Effler option, it had expired by its own terms, and before the parol extension which is contended for had been accepted by Cummins it was clearly and unmistakably withdrawn by Barnett; and before he paid any part of the purchase money to Barnett for the land in question, he had both actual and constructive notice of the rights of the appellee under his option, supported by a valuable consideration paid the 13th of November, 1901. That Barnett had the right to withdraw from the agreement, had it been made, to give Cummins two weeks to investigate the land, and to say whether he would take it or not, does not admit of discussion. Cummins was in no way bound by the alleged parol agreement to take the land, nor could Barnett be held bound by it until its terms were accepted by Cummins, and therefore it was but a parol offer on the part of Barnett to sell Cummins the land within two weeks upon

the terms of the Effler option, and which, as we have said, he had the right to withdraw before Cummins agreed to take the land, to say nothing of the superior and exclusive right of appellee to take the land under his option.

Says this court, in *Cady* v. *Straus*, 97 Va. 707, 34 S. E. 617: "Mutuality of obligation is of the essence of a contract, and it is binding upon neither party until the point is reached where the minds of the parties to it accede to one and the same set of terms. That an offer may be withdrawn at any time before its acceptance is settled law, and is, we think, not disputed. Since an offer unaccepted creates no rights, and is not binding upon the party making it, it follows that it may be revoked at any time before acceptance. See also Clark on Contracts, p. 47 and authorities cited. *Gustin* v. *Union School Dist., &c.* (Mich.), 54 N. W. 156, 34 Am. St. Rep. 361. *Note* to *Harris* v. *Murphy*, 56 Am. St. Rep. 664; *Weaver* v. *Burr, supra; Coleman* v. *Applegarth, &c.*, 68 Md. 21, 11 Atl. 284, 6 Am. St. Rep. 417.

The last cited case is similar in many respects to the case at bar. There A agreed in writing, in consideration of five dollars, to give to C the option of purchasing for a given price a lot of ground in the city of Baltimore, on or before the 1st of November, 1886. Before the expiration of the time thus limited, A verbally agreed to extend the time of the exercise of the option by C to the 1st of December, 1886. About the 9th of November, 1886, A sold and conveyed the lot in question to B. Subsequently, but prior to the 1st of December, 1886, C tendered A the sum which had been agreed upon and demanded a deed to the lot, which was refused. On the bill filed by C against A and B, for a specific performance of the contract made by A with C, it was held that as there was no consideration for the verbal promise or agreement to extend the time for the exercise of the option, such promise was a mere *nudum pactum*, and therefore not enforcible. After the 1st of

November, 1886, the verbal agreement of A operated simply as a mere continuing offer at the price previously fixed, and which offer only continued until it should be withdrawn, or otherwise ended by some act of his; but he was entirely at liberty at any time before acceptance to withdraw the offer; and the subsequent sale and transfer of the property to B had the effect of at once terminating the offer to C.

In the case at bar there is no ground for the contention made by appellants, that appellee's option was revoked by the alleged agreement with Cummins of the 11th of November, 1901. Such was not the purpose of Barnett, if the power to do so had been in him, as shown by his declaration made when told that Cummins had refused to give up the Effler option to appellee on November 13, viz: "Cummins will never get my land." The situation of Barnett, a plain unlettered farmer, was simply this: He was anxious to make sale of his McDowell county land to realize the means with which to pay for a home place purchased in Tazewell county, for which he was being pressed, and both appellee and Cummins were desirous of purchasing the McDowell county land. Cummins giving no assurance of his purpose to take the land, Barnett held on to his contract with appellee, and never sought to evade it till either intimidated by the suit brought by Cummins against him, or induced by the indemnity he obtained from Cummins into a conveyance of the land to the latter's appointee, the Faraday C. & C. Co. Cummins, by his dilatory tactics, has simply lost his right to purchase the land, and obtaining the conveyance thereof to his co-appellant places him on no higher ground than he occupied before that conveyance. He had full notice of the rights of appellee, and that appellee had a valid contract which he could enforce in a court of equity against Barnett and wife. Of this, as we have observed, he had both actual and constructive notice, and therefore taking the title to the land from Barnett

with such knowledge, he took it subject to the contract of appellee.

"A person who takes conveyance of the legal title to land, with knowledge that his grantor has agreed to sell it to another person, takes it subject to the equitable estate already vested in the purchaser." *Brodhead* v. *Reinbold* (Pa.), 50 Atl. 229, 86 Am. St. Rep. 735.

That appellee accepted the terms of the option given to him by Barnett and wife within the time specified, and tendered to them payment for the land, as the contract required, is clearly shown in the record, and it is also made to appear that he has at all times been ready and able to perform the contract on his part.

We are, therefore, of opinion that the decree complained of is right, and should be affirmed.

*Affirmed.*