[No. 5960. Decided May 10, 1906.]

## WESTERN TIMBER COMPANY, *Appellant,* v. KALAMA RIVER LUMBER COMPANY, *Respondent.*[1]

FRAUDS, STATUTE OF—SALE OF LANDS BY CORPORATION—MEMORANDUM OF SALE—RESOLUTION OF DIRECTORS—SUFFICIENCY. A resolution of the board of directors of a corporation authorizing the sale of lands of the corporation, stating the terms of sale, a copy of which signed by the president as the represntative of the corporation, was delivered to the purchaser, constitutes a sufficient memorandum of sale to take the sale out of the operation of the statute of frauds, and the same can be specifically performed.

SAME — MUTUALITY OF CONTRACT — ACCEPTANCE OF PURCHASER — BRINGING ACTION FOR SPECIFIC PERFORMANCE. A resolution by the board of directors of a corporation authorizing the sale of its lands, is not insufficient as a memorandum of sale, or void for want of mutuality, because not signed by the purchaser, where the purchaser's assent thereto is shown by promptly bringing an action for the specific performance of the contract of sale.

VENDOR AND PURCHASER—CONTRACT OF SALE—ACCEPTANCE—EVIDENCE—SUFFICIENCY. The evidence, although conflicting, is sufficient to establish that the purchaser of lands from a corporation accepted a contract of sale, where it appears that the board of directors of the corporation adopted a resolution authorizing the sale, and witnesses testified that it was accepted by the purchaser, that the notes were executed and cash procured for the payments, and that the vendor only rescinded the sale after it had received a better offer, pending negotiations to perfect the title, which it had fully intended to perfect.

VENDOR AND PURCHASER—CORPORATIONS—SALE BY OFFICER—AUTHORITY—RATIFICATION. Where the principal stockholder and president of a corporation arranges an oral sale of its lands, his acts are ratified by the adoption of resolutions by the board of directors authorizing the sale, and the acceptance of the terms by the purchaser.

SAME—ACCEPTANCE BY PURCHASER. Upon the sale of lands of a corporation, authorized by resolutions of the board of directors, the fact that the purchaser asked the adoption of further resolutions, upon the advice of attorneys examining the abstract, does not show that the sale was not accepted by the purchaser, but rather the contrary.

1Reported in 85 Pac. 338.

Appeal from a judgment of the superior court for Cowlitz county, McCredie, J., entered June 23, 1905, upon findings in favor of the defendant, after a trial on the merits before the court without a jury, in an action for specific performance of a contract for the sale of timber.   Reversed.

*Coovert & Stapleton,* for appellant, contended, among other things, that a resolution adopted by the directors of a corporation authorizing the sale of real estate, which contains all the essential elements of a valid memorandum as to terms, etc., and signed by the president and secretary, fully answers the requirements of the statute of frauds.   Brown, Statute of Frauds (5th ed.), § 346; Cook, Stockholders, § 714; *Texas etc. R. Co. v. Gentry,* 69 Tex. 625, 8 S. W. 98; *Argus Co. v. Mayor,* 55 N. Y. 495, 14 Am. Rep. 296; *Johnson v. Trinity Church Society,* 11 Allen 123; *Tufts v. Plymouth Gold Min. Co.,* 14 Allen 407; *Central Land Co. v. Johnston,* 95 Va. 223, 28 S. E. 175; *Grimes v. Hamilton County,* 37 Iowa 290.  The contract is enforcible though not signed by both parties, since to satisfy the statute of frauds it need be signed only by the party to be charged, and the act of filing a bill for specific performance binds the plaintiff.  Statute of Charles II; Pomeroy, Specific Performance, §§ 75, 76, 170; 2 Warvelle, Vendors, p. 747; 26 Am. & Eng. Ency. Law (2d ed.), 48; 29 Id. 858; 44 Cent. Dig. 1219; *Woodruff v. Woodruff,* 44 N. J. Eq. 349, 16 Atl. 4; *South etc. R. Co. v. Highland Ave. etc. R. Co.,* 98 Ala. 400, 39 Am. St. 74; *Brown v. Munger,* 42 Minn. 482, 44 N. W. 519; *Central Land Co. v. Johnson, supra;* Brown, Statute of Frauds (5th ed.), § 366.  The request for further resolutions went only to the validity of the conveyance and could not be treated as a refusal to carry out the agreement.  *Vittum v. Estey,* 67 Vt. 158, 31 Atl. 144; *Dingley v. Oler,* 117 U. S. 490, 6 Sup. Ct. 850, 29 L. Ed. 984; *Johnstone v. Milling,* 16 Q. B. Div. 460; Pomeroy, Specific Performance, 111, notes; *McPherson v. Fargo,* 10 S. D. 611, 66 Am. St. 723.

*J. F. Boothe,* for respondent, contended, *inter alia,* that neither Hessey nor Turrish, in the absence of some delegation of authority, express or implied, could bind the corporations they represented. *Lyndon Mill Co. v. Lyndon etc. Inst.,* 63 Vt. 581, 22 Atl. 575, 25 Am. St. 783; *Mount Sterling etc. Road Co. v. Looney,* 1 Met. (Ky.) 550, 71 Am. Dec. 491; 4 Thompson, Commentaries on Corp., § 4622. The contract must be complete and certain before specific performance can be enforced. Pomeroy, Specific Performance, §§ 159-161; *Derrick v. Monette,* 73 Ala. 75; *Langellier v. Schaefer,* 36 Minn. 361, 31 N. W. 690. The resolutions were mere preliminaries to the completion of a contract. *Dunham v. Boston,* 12 Allen 375; *Williams v. Bacon,* 2 Gray 387; *Gummer v. Trustees of Omro,* 45 Wis. 384; *Dixon v. Dixon,* 92 M.l. 432, 48 N. E. 152. The contract was not enforcible for want of mutuality. Pomeroy, Specific Performance, §§ 75, 76, 163, 166; *Houghwout v. Boisaubin,* 18 N. J. Eq. 315; *Warner v. Willington,* 3 Drewry 523. Plaintiff made no tender of performance and is therefore not entitled to the relief sought. 3 Pomeroy, Equity Jurisp. § 1407; *Askew v. Carr,* 81 Ga. 685, 8 S. E. 74; *Langellier v. Schaefer, supra.*

CROW, J.—This action was instituted by the appellant Western Timber Company, a Washington corporation, plaintiff below, against the respondent Kalama River Lumber Company, an Oregon corporation, defendant below, to enforce the specific performance of a contract to sell and convey a large tract of timber land in Cowlitz county, Washington. Some time in the fall of 1904, one Henry Turrish, the principal stockholder of appellant, who, acting as its manager, controlled its business policy although not an officer or director, had an interview at Duluth, Minnesota, with Mark Hessey, president of the respondent corporation, relative to the sale of said lands by respondent. Said Turrish then offered to purchase said lands for the appellant corporation for the sum of $50,000, one-half cash, the remainder to be

payable in one and two years, with five per cent interest, secured by notes indorsed by certain stockholders of the appellant company.    In pursuance of this offer, an abstract of title was furnished by respondent and approved by appellant.

On October 21, 1904, the said Mark Hessey, as president of respondent company, called a meeting of its board of directors at Iron River, Wisconsin.    At this meeting only three directors were present.    The board consisted of five directors, to wit: Mark Hessey, Winfield E. Tripp, their respective wives, and one M. T. O'Connell.    These five directors owned all of the capital stock of the respondent company, the wives of Hessey and Tripp holding stock which belonged to their husbands, in order that they might qualify as directors.    The directors present at the meeting of October 21, 1904, were Mark Hessey, Winfield E. Tripp, and M. T. O'Connell.    At this meeting the following resolution was unanimously adopted and entered upon the minute book of the corporation:

"Resolved, That the timber lands in township 7, north of range 4 east, and township 7, north of range 3 east, of the Willamette meridian, now owned by the Kalama River Lumber Company, be sold and conveyed to the Western Timber Company for the sum of $50,000; $25,000 to be paid at the sealing and delivering of a warrantee deed to the Western Timber Company, and $12,500 to be paid with notes due on or before one year from date, with interest at 5 per cent per per annum, and $12,500 to be paid with notes due on or before two years from date, with interest at 5 per cent per annum.    It is further

"Resolved, That the cash and notes received for said timber lands shall be divided between the stockholders of the said Kalama River Lumber Company, according to the stock held by the said stockholders, upon the surrendering to the said company their stock, duly assigned and transferred to said company."

After the adoption of said resolution Mr. Hessey, as president of respondent company, on October 22, 1904, delivered a signed copy thereof to Mr. Turrish, as the representative of the appellant corporation; and also handed to Mr. Turrish

the minute book and certain papers of the respondent corporation, which were in turn referred by Mr. Turrish to the attorneys of the appellant corporation, who afterwards prepared a written opinion thereon, calling attention to certain alleged irregularities in the resolution and proceedings. It is not necessary to state these objections in detail, the principal one being based upon the fact that the board of directors had not met within the state of Oregon. Appellant's attorneys suggested that certain steps be taken by respondent to perfect said proceedings and to pass the title. Mr. Turrish handed their written opinion containing said suggestion to Mr. Hessey, who, accompanied by Mr. Tripp, immediately called upon said attorneys and procured from them forms and drafts of the resolutions and proceedings which they had recommended. Mr. Hessey and Mr. Tripp, taking these documents, left the attorneys' office with the expressed intention of complying with their suggestions and completing the transfer. In the meantime Mr. Turrish provided funds for the cash payment, and had the notes for the unpaid purchase money properly executed and indorsed in accordance with the suggestion of Mr. Hessey. A subsequent meeting of the directors of the respondent corporation was called for October 27, 1904, at which time said directors, instead of taking the steps recommended by the appellant's attorneys, adopted the following resolution:

"Resolved, That the resolution adopted at a special meeting of the board of directors of the Kalama River Lumber Co., on the 21st day of October, 1904, agreeing to sell all the timber lands of said company in Cowlitz county, Washington, to the Western Timber Company, be and is hereby rescinded. Also the resolution dividing the cash and notes between the stockholders of said Kalama River Lumber Company adopted on the 21st day of October, 1904, be and is hereby rescinded."

Subsequent to the time Messrs. Hessey and Tripp had conferred with appellant's attorneys, and prior to the meeting of October 27, the respondent corporation received by wire

from Portland, Oregon, an offer of $70,000 for the land. Notice was afterwards given to the appellant, that the respondent's directors had adopted the rescinding resolution of October 27, refusing to complete the sale, and thereupon this action was immediately commenced.

On the trial, findings of fact were made, from which it in substance appears that the respondent owns the lands in Cowlitz county; that Henry Turrish is the principal stockholder of the appellant, living at Duluth, Minnesota, and at the solicitation of Mark Hessey, president of respondent corporation, offered to buy said lands for the sum of $50,000, one-half cash, the balance in one and two years, at five per cent interest; that Mark Hessey, president of respondent, called said meeting of the board of directors at Iron River, Wisconsin, on October 21, 1904, at which meeting three directors being present, the resolution first above set forth was unanimously adopted; that said resolution, the minutes of said meeting, and other papers of the respondent corporation, were thereafter handed by said Mark Hessey, president of respondent, to said Henry Turrish, and by said Henry Turrish were handed to appellant's attorneys, Washburn, Bailey & Mitchell; that on October 22, 1904, the attorneys made a written report or opinion thereon, containing certain objections to the form of the proceedings; that said written opinion was by Mr. Turrish handed to Mr. Hessey, and thereafter Mr. Hessey and Mr. Tripp, another director of respondent, called upon said attorneys for such stockholders' resolutions, directors' resolutions, proxies, etc., as said attorneys desired to be executed; that said Hessey and Tripp left said attorneys' office with said resolutions and directions, with the intent and purpose of calling a meeting to adopt the same; and that said parties called a special meeting of the board of directors, which was held in Iron River, Wisconsin, on October 27, 1904, all five directors being present, at which time the second resolution above set forth was adopted.

The appellant took no exceptions to these findings. It, how-ever, requested the court to make the following additional findings, which were refused: That upon receiving such resolution of October 21, 1904, Mr. Turrish, on behalf of the appellant, then and there assented to all of its conditions, and proceeded to comply therewith by procuring the notes cover-ing the deferred payments, and that at no time thereafter did appellant alter or modify the same or refuse to carry out the terms thereof; that at the trial appellant offered to pay into court, at such time as the court should direct,' said sum of $25,000, for respondent, and to deliver the notes of appellant company for $25,000, payable one-half on or before one year, and one-half on or before two years from October 22, 1904. To the court's refusal to make these findings, appellant has excepted. Conclusions of law being made in favor of re-spondent, judgment was entered thereon, dismissing the action, and this appeal has been taken.

The appellant insists that the trial court erred, (1) in its conclusions of law; (2) in its refusal to make the additional findings requested by appellant; (3) in its refusal to make the conclusions of law requested by appellant, and (4) in entering judgment for respondent and refusing to enter judg-ment for appellant.

The respondent corporation was formed for the purpose, among other things, of buying and selling timber lands in the state of Washington. The directors were therefore acting within the scope of their authority when they agreed to sell said lands. It appears from the evidence that all of the capital stock of the respondent corporation was owned by its five directors, and as it was anticipated that, in compliance with the suggestions of appellant's attorneys, all of said direc-tors would be present at the second meeting of October 27, 1904, said attorneys waived any objection to the fact that the meeting of said board of directors would be held in the state of Wisconsin and not in the state of Oregon, their view being that all stockholders present would be estopped from

denying the validity of the sale or transfer. The appellant contends that the first resolution of October 21, 1904, authorizing the sale of said real estate, which contains all the essential elements of a valid written memorandum as to terms, and which was signed by the president and secretary of the respondent corporation constituted a full compliance with the requirement of the statute of frauds, as being a memorandum in writing signed by the party to be charged, and as such memorandum had been made and so signed, the respondent's contract to convey can be specifically enforced. We think the resolution was a sufficient written memorandum to constitute a compliance with the requirements of the statute. Brown, Statute of Frauds (5th ed.), § 346; *Texas etc. R. Co. v. Gentry* (Tex.), 8 S. W. 98; *Argus Co. v. Mayor,* 55 N. Y. 495, 14 Am. Rep. 296; *Tufts v. Plymouth Gold Min. Co.,* 14 Allen 407; *Central Land Co. v. Johnston,* 95 Va. 223, 28 S. E. 175; *Grimes v. Hamilton County,* 37 Iowa 290.

It is contended by the respondent that, even though it be conceded that a contract had been entered into between it and the appellant, and although it had signed a written memorandum thereof, still such contract cannot be specifically enforced in equity, for the reason that it is not mutual but unilateral, and that the respondent should not be held to a specific performance for the reason that the appellant, not having signed any written memorandum thereof, could not be held liable in an action for the purchase price. In answer to this suggestion, appellant contends that, by promptly filing a bill in equity and demanding specific performance, it placed itself in a position to have a decree rendered in favor of respondent, forcing it to pay the purchase price. As the adoption of the resolution of October 21, 1904, by respondent was a sufficient compliance with the requirements of the statute of frauds, we think the contention of the appellant that the contract can be specifically enforced must be sustained. The weight of authority seems to be that the statute of frauds is

satisfied if the memorandum be signed by the party defendant in an action for specific performance. The party not signing is not bound unless, as is held by some authorities, he has accepted the same as a valid, subsisting contract. Want of mutuality arising from the failure of one party to sign cannot be successfully pleaded as a defense by the other party who did sign, as the act of filing a bill for a specific performance binds the former, makes him liable, and renders the contract mutual. See, *Woodruff v. Woodruff,* 44 N. J. Eq. 349, 16 Atl. 4, 1 L. R. A. 380; *South etc. R. Co. v. Highland Ave. etc. R. Co.,* 98 Ala. 400, 13 South. 682, 39 Am. St. 74; Fry, Specific Performance, §§ 448-459; Waterman, Specific Performance, § 201; Pomeroy, Specific Performance, § 170.

"Equity will not direct a performance of the terms of the agreement of one party when, at the time of such order, the other party is at liberty to reject the obligations of such agreement; yet, as in a case where an agreement which the statute of frauds requires to be in writing has been signed by one of the parties only, or when the contract, by its terms, gives to one party a right to the performance which he does not confer upon the other, upon the filing of a bill for enforcement in equity by the party who was before unbound, he thereby puts himself under the obligation of the contract. The contract then ceases to be unilateral; for by his own act the unbound party makes the contract mutual, and the other party is enabled to enforce it." 2 Warvelle, Vendors, p. 748.

In *Perry v. Paschal,* 103 Ga. 134, 29 S. E. 703, the supreme court of Georgia says:

"If a contract for the sale of land, required by the statute of frauds to be in writing, is evidenced by a writing signed by one party only, but sufficient to charge the party signing, such party would be bound to perform the contract. While in such a contract there is want of mutuality of obligation, still if the party in whose favor the writing is executed, though not bound because it is not signed by him, sees proper to waive his right to insist upon the invalidity of the contract, and as evidence of such waiver files a proceeding in a court

of equity to enforce it, thus affirming in writing his willingness to be bound by the stipulations in the contract, he will by such proceeding, though previously not bound, put himself under the obligation of the contract. The contract then ceases to be unilateral; for by the act of the party who was in no way originally bound by the writing the contract becomes mutual, and the other party is thereby enabled to enforce it against him."

In *Engler v. Garrett* (Md.), 59 Atl. 648, the court of appeals of Maryland says:

"Was the contract mutual? This is not disputed in the pleading or in the evidence. It is said that it is not signed by the plaintiff, but this is not necessary, even under the statute of frauds, which only requires the signature of the party to be charged. 'There may be a mutual contract to which both parties have given their assent, though the evidence of such assent may exist in a different form as to the two parties. As to one, it may be verbal, while the other's is expressed by his signature in writing.' Waterman on Specific Perf., § 201. The testimony as to the plaintiff's acceptance of the contract is ample, and, besides this, if there had been doubt on this question, it disappeared when he filed his bill to enforce it."

See, also, Browne, Statute of Frauds (5th ed.), § 366; *Brown v. Munger*, 42 Minn. 482, 44 N. W. 519; *Central Land Co. v. Johnson* (Va.), 28 S. E. 175; *Cummins v. Beavers* (Va.), 48 S. E. 891; *Miller v. Cameron*, 45 N. J. Eq. 95, 15 Atl. 842, 1 L. R. A. 554.

It is contended by the respondent that the resolution adopted by its directors on October 21, 1904, did not constitute a contract upon its part; that it did not result from a previous oral agreement, but that it was merely an offer to convey upon terms named, which offer was never accepted by the appellant, and that by reason of such non-acceptance, no contract was in fact made. On the other hand, it is contended by appellant that the resolution of October, 21, 1904, was the result of a previous oral agreement entered into by Mr. Turrish on behalf of the appellant corporation, and Mr.

Hessey on behalf of the respondent corporation, and which was to be submitted by Mr. Hessey to the respondent for its approval; and that the resolution constituted a valid written memorandum of a contract which appellant never refused to perform. The trial court, when requested by the appellant to find that it assented to all the terms of the contract, and proceeded to comply therewith, refused to do so. It failed to find that the contract was either accepted or rejected by appellant.

Upon the evidence we think the court should have found that the contract was accepted by the appellant prior to the adoption of the rescinding resolution; that it was at all times ready, willing and able to completely perform the same, and we now make such finding. It is true, there is a conflict of evidence upon this issue. Witnesses for the appellant testified that the contract was accepted, and that appellant was at all times ready, able and willing to complete the purchase, while witnesses for the respondent testified to the contrary. We, however, regard the testimony of the witnesses for appellant as the more convincing on this question, it being strongly corroborated by all the surrounding circumstances. Mr. Hessey and Mr. Tripp certainly did not call upon appellant's attorneys for any other purpose than that of procuring copies of any resolutions said attorneys might desire the respondent to adopt in completing the transfer. They accepted said resolutions and left said attorneys with an apparent intent to have them adopted. In fact, the trial court found that such intent existed. From a careful examination of the entire record, we find no intention or desire upon the part of respondent to refuse a completion of the contract, until it received the offer of $70,000 for the land, when, hoping to obtain a higher price than that to be paid by appellant, it first conceived the idea of rescinding its former resolutions of October 21 and refusing to adopt the additional resolutions suggested by appellant's attorneys. It is undisputed that the appellant had the money ready to make the cash

payment, and had procured the execution of the notes in exact accordance with the request of respondent.

It is further contended by respondent that, as Mr. Turrish was not an officer or director of the appellant corporation, he was without authority to contract in its behalf. It appears that the acts of Mr. Turrish were ratified by the appellant corporation, in that it executed and its officers and stockholders endorsed the promissory notes for the deferred payments of purchase money. It has at all times been ready to make the cash payment, deliver said notes, and perform the contract on its part. The record fails to show that respondent ever made any demand of performance, nor does it show any refusal by appellant. Appellant has again ratified the acts of Mr. Turrish by its prompt procedure in bringing and prosecuting this action. Mr. Turrish is shown to have been the principal stockholder of the appellant corporation, to have acted as its manager, and to have at all times controlled its business policy. The claim of want of authority upon his part seems to have been an afterthought, conceived by respondent for the purpose of escaping liability in this action. We think it is in no position to make any such contention.

Respondent contends that the contract was not accepted by appellant, because it asked the adoption of further resolutions by respondent. The mere fact that appellant, out of an abundance of caution, desired further steps to be taken looking towards the completion of the transfer of the title, does not show any refusal upon its part to accept the offer of respondent. On the contrary it indicates an opposite intention. Had respondent tendered the appellant an unacknowledged deed for the land, it would be just as reasonable to contend that a request for a corrected deed would constitute a refusal by appellant to accept the contract or complete its performance. Our view is that the appellant's acts clearly indicated a fixed intention to accept and perform the contract, rather than any inclination to refuse acceptance.

From a careful examination of the entire record and the

authorities, we conclude, (1) that the resolution of October 21, 1904, was a sufficient compliance with the requirements of the statute of frauds; (2) that the appellant at no time refused to accept or perform the contract; (3) that the offer of respondent was accepted by appellant prior to the adoption of the rescinding resolution, and (4) that the contract is one that can be specifically enforced against the respondent. This being true, the trial court erred in dismissing the action. It is ordered that the judgment of the honorable superior court be reversed, and the cause remanded with instructions to enter a decree for specific performance in accordance with the prayer of the complaint.

MOUNT, C. J., DUNBAR, HADLEY, RUDKIN and ROOT, JJ., concur.