[No. 9032.     Department Two.     January 21, 1911.]

J. M. WATKINS *et al.*, *Respondents*, v. ANNA DAVISON, *Appellant.*[1]

VENDOR AND PURCHASER—CONTRACT—MUTUALITY.  A receipt, containing the terms of a contract to purchase land, made to one as agent, the principal being undisclosed, and accepted in writing by the owner, is not a mere option or objectionable for lack of mutuality, where the principal made the preliminary payment of $50, tendered timely payment and performance, and was at all times ready to perform, promptly commencing action for specific performance.

SPECIFIC PERFORMANCE — DEFENSES — FRAUD — PLEADINGS.  In an action for specific performance, fraud is an affirmative defense to be specially pleaded.

VENDOR AND PURCHASER — RESCISSION BY VENDOR — FRAUD — EVIDENCE—SUFFICIENCY.  No fraud is shown, warranting a vendor in refusing to complete a sale, where it appears that she had listed the property with her selling agent, that a contract to purchase was made with the agent, signing as such, for an undisclosed principal, and accepted in writing by the vendor, with a preliminary payment of $50, that the vendor at the agent's request cured defects in the title, and never offered to return the money received, that no fraud, or improper or inconsistent action by the agent was shown, and the vendee tendered timely payment and performance; especially where the vendor, in an action for specific performance, did not plead fraud as a defense (CHADWICK, J., dissenting).

Appeal from a judgment of the superior court for Spokane county, Webster, J., entered January 19, 1910, upon findings in favor of the plaintiffs, after a trial on the merits before the court without a jury, in an action for specific performance. Affirmed.

*Frederick W. Dewart* (*Guy Brockway*, of counsel), for appellant.

*Danson & Williams*, for respondents.

CROW, J.—Action by J. M. Watkins, Maud Watkins, his wife, and John Bigham, against Anna Davison, to enforce specific performance of a contract to sell real estate.  From a decree in their favor, the defendant has appealed.

[1]Reported in 112 Pac. 743.

Respondents alleged that, on August 12, 1909, the appellant, being the owner of certain real estate in the city of Spokane, entered into a written agreement to convey the same to M. C. Hunter Company, a corporation, agent, as follows:

"Spokane, Wash., August 12, 1909.

"Received of M. C. Hunter Co., Agent, $50 as deposit on account of the purchase of lot 15, block 70, of Central addition to Spokane, Washington. Purchase price is $2,100. Full initial payment to be $1,000, of which the above $50 is a part; balance· of initial payment to be made at our office when settlement shall be made, on or before September 1, 1909; deferred payments of $1,100 to be paid as follows: On or before eighteen months from Sept. 1, 1909, with interest from Sept. 1, 1909, at 8 per cent per annum payable semi-annually. Purchaser to assume prior encumbrances as follows: None, . . .

"Purchaser shall have abstract certified down to date for examination. After deal is closed, abstract to remain with selling party until property is paid for, when purchaser shall have a clear merchantable title to said property, clear of all encumbrances, except as aforesaid, and in case he shall find any defects in title as it now is, the seller shall have a reasonable time in which to perfect the same, but if it cannot be so corrected, the deposit shall be returned and deal declared off.

"It is agreed that in case the purchaser fails or refuses to take said property as above outlined, we shall, at our option, retain the above deposit in lieu of services rendered. Money paid by the purchaser may be used in paying off existing encumbrance. This sale is subject to owner's approval.

"In closing this deal usual legal blanks used by us shall be used.

"Purchaser shall have contract for warranty deed.

"Purchaser agrees to take said property, and pay for the same as above outlined.

"M. C. Hunter Co., Agents, Incorporated
"Per M. C. Hunter.

"I accept above sale and agree to pay you a commission of ———— per cent $100.

"Anna Davison, Owner;"

that the agreement was made on behalf of respondents as

purchasers; that an abstract was furnished, which disclosed a defect of title for want of the record of certain probate proceedings; that appellant directed M. C. Hunter Company to procure and record a certified copy of the proceedings, which was done; that the initial payment was made and tendered by respondents in accordance with the agreement; that they executed on their part the contract for a warranty deed as therein provided, but that appellant refused to execute the same, or complete the sale. Appellant answered with denials only. The trial court made findings in accordance with the allegations of the complaint.

There is some contention in the briefs, regarded by us as immaterial, relative to the proper location and purpose of the words "purchaser agrees to take such property and pay for the same as above outlined," which appears in the receipt. These words are followed in the original by blank lines, manifestly intended for signatures of the purchasers. M. C. Hunter Company did not at first disclose the names of respondents to appellant, and the lines remained blank. The receipt upon its face, however, shows that the offer to buy was made through M. C. Hunter Company on behalf of an undisclosed purchaser, and that the offer was accepted in writing by appellant, which made it her complete and valid agreement to sell. She now contends that the receipt was an option only, that no mutuality of contract existed, and that her unilateral acceptance did not bind the purchasers. Respondents made the payment of $50, thereafter tendered timely payment and performance, have at all times been ready, willing, and able to close the deal, and commenced this equitable action on September 15, 1909, to compel specific performance. These acts on their part supplied any lack of mutuality. *Western Timber Co. v. Kalama River Lumber Co.*, 42 Wash. 620, 85 Pac. 338, 114 Am. St. 137; *Conner v. Clapp*, 42 Wash. 642, 85 Pac. 342.

It will be observed that the receipt for the $50 earnest money was executed by M. C. Hunter Company, as agent,

and that appellant as owner appended thereto her written acceptance of the sale. The evidence discloses that she had listed the property with M. C. Hunter Company, as her agent, for sale at $2,100; that shortly thereafter the respondents offered $2,050, advancing $50 in cash with the offer; that M. C. Hunter Company drew the receipt above set forth, reciting a sale for $2,050, and communicated the offer to appellant who refused to accept the same, but did agree to sell for $2,100; that this modification was accepted by respondents, and that the purchase price was changed in the receipt to correspond therewith; that M. C. Hunter Company thereupon delivered its $50 check to appellant, who, without demanding the names of the purchasers, signed the acceptance and delivered her abstract of title for examination; that at her request the title was promptly perfected; that M. C. Hunter Company made certain disbursements for extending the abstract, recording probate papers, and paying taxes and special assessments; that respondents delivered their check to M. C. Hunter Company for $950, in settlement of the remainder of the initial payment of purchase money; that they as vendees executed a contract of sale calling for a warranty deed, in accordance with the agreement; that M. C. Hunter Company, at their request and for the purpose of closing the deal, tendered the money and contract to appellant, who refused to execute the contract or complete the sale; that M. C. Hunter Company did not represent respondents, the purchasers, in any manner other than appeared on the face of the receipt, their identity being then undisclosed to appellant; and that M. C. Hunter Company did not receive, nor was it at any time to receive directly or indirectly, remuneration or profit from the respondents or from any person other than the appellant, who had agreed to pay it a commission on the sale.

We do not understand that appellant now denies her written acceptance of the contract, or that she denies that she had an opportunity to read and learn its contents; that it was

made to her by M. C. Hunter Company; that the $50 check was left with her; that she delivered an abstract of title to M. C. Hunter Company, or that the initial payment was tendered her in accordance with the terms of the receipt, from which tendered payment M. C. Hunter Company deducted its commission, and the disbursements it had made at her request. Appellant's contention seems to be that she has in some manner been defrauded by M. C. Hunter Company, her selling agent; that in the language of her counsel, it has attempted to serve two masters. She testified that she told the agent she would sell for $2,100 to $2,200; and contends that it originally offered the lots to respondents for $2,050; that M. C. Hunter Company did not disclose the names of the purchasers, but as her agent, executed the receipt to M. C. Hunter Company, as agent for the purchasers; that she did not at the time know a check for $50 earnest money had been left with her, when she accepted the sale, she thinking the check was a receipt for her abstract of title.

She now resorts to the defense of fraud, although no such defense was pleaded in her answer. Respondents objected to evidence which she offered for the purpose of showing fraud, which defense when pleaded could only be available to avoid a contract already executed. By her answer she had denied its execution. Fraud being an affirmative defense should be pleaded. This being an equitable action, the trial judge was very liberal in admitting evidence offered by appellant upon which she relied to show fraud, and were it to be conceded that she was entitled to that defense without pleading it, we nevertheless conclude that she has failed to sustain it. She herself testified that a duplicate copy of the written receipt was delivered to, and left with her, by M. C. Hunter Company, and that about September 1, 1909, after some delay had occurred in perfecting the title, she informed M. C. Hunter Company that she did not care to close the deal. If there had been any fraud or deceit on the part of M. C. Hunter Company, she must have been aware of it on the date last men-

tioned.   The original check for $50 which was given her by
M. C. Hunter Company on August 12, 1909, when she first·
ratified the sale, is attached to the statement of facts as an
exhibit, and shows that she endorsed and cashed it on Septem-
ber 7, 1909, several days after the date on which she says she
attempted to repudiate the agreement.   There is no evidence
that she offered to return the check or its proceeds to
M. C. Hunter Company.   The evidence unquestionably
shows that the sale had been made to respondents by M. C.
Hunter Company, as appellant's agent, on August 12,
1909.   It also appears that respondents insisted on closing
the deal, and that M. C. Hunter Company, at appellant's
instance, perfected the title, and made disbursements for
expenses, taxes, and assessments.   We see no impropriety on
the part of M. C. Hunter Company in making tender to appel-
lant and requesting her to execute the contract for a warranty
deed in accordance with the terms of the receipt, after the
purchase money and the proposed contract had been ten-
dered and delivered to it as appellant's agent for that pur-
pose.   In view of the attitude of appellant and her continued
opportunities for informing herself as to the terms of the
sale, we find no improper, unconscionable or inconsistent con-
duct on the part of her selling agent sufficient to deprive the
respondents of their right to a specific performance.

The judgment is affirmed.

DUNBAR, C. J., RUDKIN, and MORRIS, JJ., concur.

CHADWICK, J. (dissenting)—In my opinion the Hunter
Company was dealing on its own account and not for another,
and that appellant should not be bound to her contract over
her protest and attempt to rescind.