# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

## WATKINS v. ROBERTSON AND OTHERS.

### June 14, 1906.

1. OPTION UNDER SEAL TO SELL STOCK—*Consideration—Specific Perform-ance.*—An· option under seal for the sale of shares in a joint stock company is a binding offer from which the promisor cannot recede during the time stipulated for in the option, and, if accepted during that time, constitutes a contract the specific performance of which a court of equity will compel. The option is in the nature of a continuing offer to sell, and, being under seal, must be regarded as made upon a sufficient consideration, and no proof to the contrary will be received at law or in equity.

2. OPTION UNDER SEAL—*Recited Consideration—Contradiction—Estop-pel.*—The recited consideration in a deed can never be questioned or contradicted (1) for the purpose of showing that it was not founded on a valuable consideration, and so defeat it; or (2) for the purpose of raising a resulting trust in the grantor. In the ab-sence of fraud or mistake, the recital must be treated as conclusive for the purpose of giving effect to the operative words of the in-strument. This is certainly true as to a third person, who, in re-liance upon such recital, has acquired rights under the instrument. An acknowledgment in a written contract of an act done which is essential to the validity of the contract is conclusive upon the party making it.

Appeal from a decree in chancery of the Chancery Court of the city of Richmond. Decree for defendants. Complainant appeals.

*Reversed.*

The opinion states the case.

---
Opinion.
---

*Coke & Pickrell, F. W. Christian,* and *A. B. Guigon,* for the appellant.

*Meredith & Cocke,* for the appellees.

CARDWELL, J., delivered the opinion of the court.

This litigation grows out of the following agreement:

"Memorandum of agreement, made this 26th day of October, 1904, by and between W. S. Robertson, of the first part, and S. S. Elam, of the second part.

"The said W. S. Robertson, party of the first part, in consideration of one dollar to *them* in hand paid by said S. S. Elam, party of the second part, at and before the execution of this contract, the receipt of which is hereby acknowledged, *do* hereby covenant, contract and agree to sell to the said S. S. Elam, party of the second part, or his assigns, 496 shares of the capital stock of the Watkins-Cottrell Company, at and for the price of $137.50 per share, and to deliver the same to said second party on payment or tender by said second party to said first party of the purchase money therefor at the said rate of $137.50 per share; and it is agreed between the parties hereto that the said party of the second part shall have the right to make the said tender or payment of the said purchase money to said first party and thereupon to demand the delivery of the said capital stock until December 1, 1904.

"Witness our hands and seals the day and year first above written.

"W. S. ROBERTSON. (Seal).
"S. S. ELAM. (Seal)."

On the 21st of November, 1904, Elam, in writing and for value received, assigned the above "option and agreement" to Oliver J. Sands, or his assigns, and on the same day and in the same words Sands made a similar assignment of the agreement to Charles H. Watkins, or his assigns.

On the same date of the agreement Robertson executed and delivered to Elam the following paper:

"Oct. 26, 1904.

"Mr. S. S. ELAM, *Richmond, Va.*

"Dear Sir,—Referring to the option given you to-day on my 496 shares of stock in the Watkins-Cottrell Company, at $137.50 per share, until December 1, 1904, I beg to advise that if the said option is exercised by you or your assigns I will allow you a rebate of $3,180.38 on the price named in said option.

"Yours very truly,

"W. S. ROBERTSON."

This latter agreement was by Elam, on the 21st of November, 1904, for value received, also assigned to Oliver J. Sands, or his assigns.

The plaintiff, Charles H. Watkins, filed his original and amended bills in this cause for the purpose of enforcing the specific performance of the contract of October 26, 1904, for the sale of the 496 shares of stock referred to therein, he claiming to have purchased the stock through Oliver J. Sands on November 21, 1904, in accordance with the terms and provisions of the contract; that on the day and year last mentioned the said Sands did in fact purchase said option contract from Elam, paying him therefor the sum of $3,180.38, and

took an assignment thereof from him; that Sands, acting in the matter for the plaintiff, approached the defendant, W. S. Robertson, on the day and year last stated and notified Robertson that he, Sands, desired to exercise said option contract by the purchase of the 496 shares of stock at the price named in the contract, to-wit: $137.50 per share, and then and there offered to pay Robertson the full purchase price thereof, but Robertson refused to receive the same, stating that he had already sold the stock to another party; that upon this refusal of Robertson, Sands assigned said option contract to the plaintiff, of which assignment Robertson was at once notified; and that Robertson was also then notified that the plaintiff was ready, able and willing to pay for the stock the full price agreed upon in the option contract, and warned to make no assignment or transfer of the stock to other than the plaintiff. An injunction was prayed for and granted, restraining Robertson, his agents, etc., from selling, assigning or delivering the said shares of stock of the Watkins-Cottrell Company in the bill mentioned, or any part thereof, or in any way parting from the possession of the stock, or the certificates representing the same, until the further order of the court.

The plaintiff being sick at the time his original bill was filed, and unable to confer with counsel, he tendered and was permitted to file an amended bill. The amended bill adopts the allegations of the original bill, and, in addition thereto, sets out more in detail the negotiations and dealings had between the plaintiff and Elam concerning the purchase of the stock, which plaintiff claims to have made on November 21, 1904, and charges that if the contract of October 26, 1904, should be construed to be an option contract merely, the same was valid and binding upon Robertson and irrevocable by him, it being supported by a valuable consideration, and given under the

seal of Robertson; but if not to be construed to be an option con-
tract merely, it is a bilateral contract, valid and binding upon
both parties thereto, whereby Elam, in consideration of a cove-
nant on the part of Robertson to sell him and his assigns the
496 shares of the capital stock of the Watkins-Cottrell Com-
pany at the price therein named, bound himself unconditionally,
on or before the 1st day of December, 1904, to take said stock
and to pay to Robertson the price agreed upon in said contract
therefor, viz: $137.50 per share, less the deduction of $3,180.38
from the purchase price, as provided in the agreement made
by Robertson in a letter to Elam contemporaneous with the con-
tract and attached thereto as a part thereof. It is further
charged that the sale claimed to have been made by Robertson
of the stock in question to a party other than the plaintiff was
made long after Elam had agreed to sell the stock to the plain-
tiff, and that Robertson had in fact never made the sale he
claimed to have made to one W. D. Stuart, president of the
Richmond Hardware Company, but that Stuart, a rival in the
business of the Watkins-Cottrell Company, merely claimed the
sale was made to him. Stuart was, along with Robertson, made
a party defendant to the amended bill, which prayed for a
specific performance of the contract of October 26, 1904, in
accordance with the sale made thereunder by Elam to the plain-
tiff.

It is proper, perhaps, to state that in the bills filed by the
plaintiff he charges that by reason of his reliance upon the
validity of the contract between Robertson and Elam and an
understanding had between himself and Elam, the plaintiff
found it necessary to take a trip North at great cost, trouble
and expense to make his financial arrangements for paying for
the stock, and on or about the 21st of November, 1904, re-
turned to the city of Richmond ready and prepared to demand

the delivery of the stock and pay the purchase price agreed upon therefor, and that this cost, trouble and expense would not have been incurred but for his reliance upon the validity of the contract held by Elam with Robertson and the agreement between the plaintiff and Elam that the plaintiff should have until the 21st day of November, 1904, to consummate his purchase of the stock in question; and that the agreement between the plaintiff and Elam to the effect that the plaintiff should have until the 21st of November, 1904, to conclude his purchase of the stock was by a positive contract entered into and made between Elam and the plaintiff on November 14, 1904.

Robertson answered the amended bill by adopting his answer to the original bill, and also denying that any positive contract had been made between Elam and Watkins on November 14, or that Watkins had, at his own expense, taken a trip North to raise the means of buying the stock, but went there to attend a meeting of the National Hardware Association at the expense of the Watkins-Cottrell Company. Stuart adopted the answer of Robertson as his own; and upon the pleadings in the cause, the exhibits therewith and an affidavit made and filed by Robertson, the lower court, by its decree, reciting that the case would be rendered doubtful by the conflicting evidence of the parties, and by the consent of both plaintiff and defendant, and in pursuance of the statute in such case made and provided, adjudged, ordered and decreed that an issue be made up and tried by a jury at the bar of the court on the 23d day of February, 1905, to ascertain whether the alleged purchase of the 496 shares of the capital stock of the Watkins-Cottrell Company, as claimed in the bills of complaint to have been made by the plaintiff, Charles H. Watkins, was and is valid and binding upon the defendant, W. S. Robertson.

Upon the trial of this issue it was found by the jury that the alleged purchase of the 496 shares of stock in question, as claimed in the bills of complaint to have been made by the plaintiff, Watkins, was not binding upon the defendant, Robertson. Upon the coming in of this verdict, the plaintiff moved the court to set it aside because contrary to the law and the evidence, and again moved the court for leave to file an amended and supplemental bill. The court, by its decree of March 11, 1905, overruled the motion for leave to plaintiff to file an amended and supplemental bill, because the pleadings already filed sufficiently raised all the questions proposed to be raised by the amended and supplemental bill, and all such questions were presented to the court in the instructions asked for by the complainant on the trial of the issue, and were then, after argument, decided against the complainant; and also overruled plaintiff's motion to set aside the verdict of the jury, and dissolved the injunction theretofore awarded in the cause. From this decree the case is before us for review upon an appeal allowed to the plaintiff in the court below.

. At the trial of the issue before the jury the plaintiff (appellant here) took a number of exceptions to the rulings of the court. From the first of these exceptions it appears that after appellant had rested his case, the appellees introduced themselves and one R. E. V. Farrar as witnesses, who were asked sundry questions and made sundry answers thereto, to each of which appellant excepted, and the ruling of the court in permitting these questions to be asked and answers thereto made is assigned as error.

The objection here made to the evidence is on the ground that it elicited from the witnesses hearsay testimony, in that the questions sought to, and the answers did, bring out certain statements made by Stuart to Robertson in the absence of both

Watkins and Elam. It is sufficient, under the circumstances, for us to say that this evidence was improper, and we shall not consider it at length for the reason that the instructions given by the court, as we shall presently see, took the case from the jury.

The next assignment of error is founded upon appellant's second bill of exceptions, which is to the ruling of the court in giving instructions "A," "B" and "C," at the request of appellees.

The theory of Robertson's defense was that the agreement made between him and Elam, which has been above set out, authorized Elam to sell for him (Robertson) the stock in question to one Springer, only, at the price of $137.50 per share, but not to anyone else, and that no consideration was given for this agreement, which he calls an option, and therefore it was not valid and binding upon him (Robertson).

It will be observed that the agreement, or option, in question makes no mention whatever of Springer's name, and while there was some testimony given and improperly admitted to the effect that there was talk between Robertson and Elam concerning the sale of the stock to one Springer, the limitation upon the contract or option as claimed by Robertson has no foundation in fact and could not have been engrafted upon that agreement except by mutual consent of both parties.

Much has been said also in the argument as to Robertson's unfriendliness towards appellant, and that by reason thereof he set about to defeat the sale of the stock by Elam to appellant as soon as he ascertained that it had been made or was contemplated, and that the sale claimed to have been made by Robertson to Stuart was for the purpose of defeating a sale of the stock to appellant, the sale to Stuart being at the same price per share of stock as the sale to appellant. But these matters can have no bearing upon the question to be decided here. The

issue in the case is sharply drawn out by the instructions given and refused by the lower court.

As claimed by counsel for appellant, the court, by instructions "A," "B" and "C," practically took the case from the jury and left them no room to bring in a verdict other than they did. "A" told the jury that the papers introduced in evidence (that is, the contract and the letter from Robertson to Elam appended thereto) together constituted an option, and that said option was a unilateral or one-sided contract; that is, it set forth certain obligations assumed by the defendant, Robertson, but contained none assumed by or binding upon Elam.  "C" made the verdict depend in part upon the disputed questions of fact, whether Robertson subsequently sold the stock to Stuart, and whether Elam assented to that sale; while "B," on the other hand, practically directed a verdict for the defendants, as the facts upon which that instruction is predicated were not disputed by the plaintiff; that is, that the one dollar mentioned in the contract was not actually paid by Elam to Robertson, and that Watkins did not notify Robertson of his purchase of the stock on November 14, 1904, before the attempted withdrawal of the option by Robertson on November 21, 1904.

As opposed to the theory of the case submitted to the jury by these instructions, appellant asked for, among others, three instructions, Nos. 1, 2 and 3, which the court refused.  The first is general in its terms, covering the ground specifically mentioned in Nos. 2 and 3, which latter instructions set forth the grounds appearing on the face of the contract between Elam and Robertson, upon which, the court should, as a matter of law, have told the jury that that paper was an irrevocable option.

If the paper in question is to be regarded as it was regarded by the court below as merely an option given without a con-

sideration—that is, an offer to sell—it might have been withdrawn by Robertson before acceptance by Elam, or an assignee of his, by notice to Elam or such assignee; but if given for a valuable consideration it could not have been withdrawn by Robertson before the time specified therein expired. *Cummins* v. *Beavers,* 103 Va. 230, 48 S. E. 891, 106 Am. St. Rep. 881.

In the case cited the contract or option was treated as though the consideration named therein was actually paid on the day the option was written and, therefore, the case has but little bearing upon the consideration of the question presented here.

Whether the contract here is to be treated as a contract made for a valuable consideration depends, first, upon what force and effect is to be given a contract under seal over a like contract not under seal; and, second, whether the recital in the contract that a valuable consideration had been paid by Elam and received by Robertson estops the latter in a court of equity to set up, as a defense to a suit for the specific performance of the contract, that no consideration was in fact paid therefor.

It is earnestly contended (1) that the paper shown by Elam to, and relied upon by, appellant was a valid option, supported by the necessary valuable consideration, as evidenced by the solemn representation on its face, and remained in force from the date of the paper, October 26, 1904, to December 1st following, irrevocable by Robertson; and (2) that Robertson is estopped to deny the recital in the paper that he had received a valuable consideration for its execution, and especially will not be permitted to make this denial to the prejudice of an innocent third party, namely, appellant.

There is much conflict among the authorities as to whether courts of equity will decree specific performance of an executory contract or covenant because it is under seal, where it is not also supported by an actual valuable consideration, and many of

them take the negative view; but, undoubtedly, this is to be ascribed to the fact that the ancient rule of the common law that a seal conclusively imports a consideration, has been repealed or modified by statute in most of the States, and text-writers, in citing cases, fail in many instances to make allowance for this fact.

Upon this subject it is said in section 70, 1 Pomeroy's Eq.: "In most of the States all distinction between sealed and unsealed instruments is abolished, except so far as the statute of limitations operates to bar a right of action; in others, the only effect of the seal upon executory contracts is to raise a *prima facie* presumption of a consideration, while it is still required on a conveyance of land; in a very few, the common-law rule is retained, which makes the seal conclusive evidence of a consideration."

In Virginia we have no statute abolishing or modifying the common law rule as to the effect to be given to the seal upon executory contracts.

"In a contract under seal, a valuable consideration *is presumed* from the *solemnity of the instrument,* as a matter of public policy and for the sake of peace, and presumed *conclusively,* no proof to the contrary being admitted either at law or in equity so far as the parties themselves are concerned." 3 Min. Inst., Pt. 2, 139.

We have a number of decisions holding that parol evidence is admissible to show what was the real consideration for a conveyance made of property, where the conveyance was attacked for fraud; but they have no application here and do not impair the force of the statement which we have just quoted from Minor's Institutes to the effect that no proof is to be admitted, either at law or in equity, to overcome the presumption from the solemnity of the contract under seal that the considera-

tion named was actually paid as between the parties to the contract.

The case of *Willard -. Tayloe,* 8 Wall. (U. S.) 557, 19 L. Ed. 501, was a suit in equity for the specific performance of a contract for the sale of certain real estate, and the opinion by Mr. Justice Field says: "The covenant in the lease giving the right or option to purchase the premises was in the nature of a continuing offer to sell. It was a proposition extending through the period of ten years, and being under seal must be regarded as made upon a sufficient consideration and, therefore, one from which the defendant was not at liberty to recede. When accepted by the complainant, by his notice to the defendant, a contract of sale between the parties was completed. This contract is plain and certain in its terms, and in its nature and in the circumstances attending its execution appears to be free from objection. . . . When a contract is of this character it is the usual practice of courts of equity to enforce its specific execution upon the application of the party who has complied with its stipulations on his part, or has seasonably and in good faith offered, and continues ready to comply with them." The opinion further says that it is recognized that this is not invariably the practice, and that this form of relief is not a matter of absolute right to either party, but is a matter resting in the discretion of the court, to be exercised upon a consideration of all the circumstances of each particular case.

In *O'Brien* v. *Boland,* 166 Mass, 481, 44 N. E. 602, the contract specifically enforced was an offer of A to sell houses to B within a certain period, the contract being under seal, and it was held that the contract was an irrevocable covenant conditioned upon acceptance within the time named. There it was attempted to withdraw the offer before it had been accepted, and four days afterwards the plaintiff wrote to the defendant.

that he had purchased in accordance with the offer. The court viewing the contract as an irrevocable covenant conditioned upon acceptance within the time named, because it was under seal, and notice of the acceptance of the offer having been given before the expiration of the time limit, compelled specific performance of the contract. In that case, as in the case at bar, the contention was made that because the defendant could not have compelled the plaintiff to buy before his acceptance of the offer there was a want of mutuality which should defeat the bill. But the court held that the offer being under seal it was an irrevocable covenant, conditioned upon acceptance within ten days, and the written acceptance within that time made it a mutual contract which the plaintiff could enforce. See also Lawson on Contracts, page 20.

In *Guyer* v. *Warren,* 175 Ill. 228, 51 N. E. 580, the contract or option was in all respects similar to the contract here under consideration, except there the offer was to sell land, while here is is to sell shares of stock of the Watkins-Cottrell Company; and the suit was for specific performance of the contract in a court of equity. In the opinion in that case it is said: "Such contracts are perfectly valid and it is now well settled that a court of equity may decree a specific performance of them. *Watts* v. *Kellar,* 56 Fed. 1, 5 C. C. A. 394. The covenant in the present contract, giving an option to purchase, was in the nature of a continuing offer to sell. It was made under seal, and hence must be regarded as having been made upon a sufficient consideration. When the offer to sell was accepted by the appellant by his notice to the appellees, the contract of sale between the parties was completed, and the appellees were not at liberty to recede from it."

In Clark on Contracts (Hornbook Ser., 2d ed.), p. 23, it is said, upon a number of authorities cited: "Where, however,

an offer under seal in the form of an option is delivered to the offeree, the doctrine that it cannot be revoked applies, and if the option is exercised by acceptance of the offer within the time limited, the agreement will be specifically enforced, or damages may be recovered for its breach. *O'Brien* v. *Boland, supra; Mansfield* v. *Hodgdon,* 147 Mass. 304, 17 N. E. 544; *Mathews Slate Co.* v. *New Empire Slate Co.,* 122 Fed. 972; *Fuller* v. *Artman,* 69 Hun. (N. Y.) 546, 24 N. Y. Supp. 13; *Willard* v. *Tayloe, supra; Smith* v. *Smith,* 36 Ga. 184, 91 Am. Dec. 761; *Donnelly* v. *Parker,* 5 W. Va. 301; *Weaver* v. *Burr,* 31 W. Va. 736, 8 S. E. 743, 3 L. R. A. 94.

As opposed to the views taken in the authorities to which we have referred, counsel for appellees rely on, among others, the cases of *Graybill* v. *Brugh,* 89 Va. 895, 17 S. E. 558, 21 L. R. A. 133, 37 Am. St. Rep. 894, and *Cummins* v. *Beavers, supra.* As already remarked, the last named case did not turn upon the question here under consideration. The first case was decided on the ground that the option contract in question was one-sided and lacking in mutuality and, therefore, could not be enforced in a court of equity; but in the later cases of *Central Land Co.* v. *Johnson,* 95 Va. 223, 28 S. E. 175, and *Cummins* v. *Beavers, supra,* the decision in *Graybill* v. *Brugh* was practically over-ruled. Other authorities, text-writers and decided cases seem to sustain the view contended for by appellees and taken by the court below, but as the authorities we have cited as supporting the view contended for by appellant are founded upon what appears to us to be the sounder and safer principles and are more in accord with the few decisions by this court bearing upon the question involved, we conclude that they should be followed.

In 9 Cyc. at pages 287-8, it is said: "3. (b) *Options Under Seal.*—The common law rule that where an offer is made under

seal it cannot be revoked, applies to options given under seal. The seal renders a consideration unnecessary, and if the option is exercised by acceptance of the offer within the time limited, the agreement will be specifically enforced, or damages may be recovered for its breach, notwithstanding an attempted revocation."

In support of this text numerous authorities are cited, and those we have been able to examine clearly sustain the view taken. The same author, in a note on page 288, cites a few cases to show that some of the courts do not attach so much sanctity to a seal, and allow evidence to be produced to show there was no consideration for the offer. Among the cases there cited is *Graybill* v. *Brugh, supra.*

In referring to these cases, in 6 Pom. Eq., note to section 773, it is said that they must be considered as wrong in principle, overlooking the fact that it is a contract and not an offer, the enforcement of which is sought. With reference to *Graybill* v. *Brugh* it is said that the case "should rest upon another ground—intervening equitable right of a third party—if it is to be supported." In discussing *"Unilateral Contracts—Options,"* at section 773, the author says: "Courts of equity often speak of enforcing an option as if such enforcement were an apparent exception to the rule of mutuality. In fact, mutuality has nothing to do ordinarily with contracts of option. The option is only a binding offer. The promiser has parted with the right to withdraw his offer. There is nothing to enforce in equity before the exercise of the option, as the promisee has already obtained his right—to have the offer kept open. Upon the exercise of the option, *i. e.,* the acceptance of the offer—and the filing of the bill by the promisee would be one way of exercising it—the option ceases as an option and equity has an ordinary bilateral contract to deal with. Thus it is usually said

that an option to renew a lease is enforceable at the will of the lessee having the option. In fact the lessee must first exercise his option, and then he has a binding contract for the renewal, and not an option. It can make no difference that defendant has tried to withdraw the option. He bound himself not to do so. This view is further supported by the enforcement of an exercised option which was under seal and without actual consideration. The offer being under seal cannot be withdrawn. Upon its acceptance, the court cannot be concerned with the lack of consideration (which is a good defense to specific performance in equity), for it is the contract and not the option that is being enforced."

The adding of the words in brackets takes nothing from the force of the paragraph, because the author is there speaking of offers other than those under seal, which he says cannot, for the reason that they are under seal, be withdrawn.

Coming, then, to the consideration of the second proposition, that Robertson is estopped to deny that the offer made in the paper executed by him and Elam was for a valuable consideration, having recited therein the payment of one dollar: The English authorities maintain that the recital of a valuable consideration in a deed is conclusive. In the United States it seems to be open to question or explanation for many purposes, but for two it is not: First, the recited consideration can never be questioned or contradicted for the purpose of showing that the deed was not founded on a valuable consideration, and so defeat it; nor, second, for the purpose of raising a resulting trust in the grantor. What is meant is that a party making a deed or offer to sell, in writing, cannot himself deny the recital in the paper he executed for the purpose of invalidating his contract or conveyance, or to raise a resulting trust in himself. The recital cannot be disproved, but must be treated as con-

clusive for the purpose of giving effect to the operative words of the conveyance or offer. *McCrea* v. *Purmort*, 16 Wend. (N. Y.) 460, 30 Am. Dec. 103; Devlin on Deeds, sec. 834.

While, as between the parties to a deed of conveyance, or even an executory contract, the recital of the receipt of the consideration would not preclude a recovery of the purchase money due, in the one case, or the real amount of the consideration in the other, the recital of the payment of a consideration cannot be contradicted so as to defeat the operation of the conveyance according to the purpose therein designated, unless it be on the ground of fraud or illegality. So the obligor in a bond which expressly acknowledges a consideration is estopped to deny the consideration for the purpose of avoiding the bond in the absence of any fraud or mistake. 24 Am. & Eng. Ency. L. 64.

The case of *Lawrence* v. *McCalmont*, 2 How. (U. S.) 445, 11 L. Ed. 326, held that the principle applied to executory contracts not under seal; and to the same effect is *Silver* v. *Kent*, 105 Fed. 840.

The case of *Guard* v. *Bradley*, 7 Ind. 600, was a suit for the specific performance of a bond, and the opinion says: "The appellants insist that the bond was without consideration, and that, being merely voluntary, a court of equity will not enforce it. We have no doubt upon the point that a court of equity will not enforce the specific execution of a contract merely voluntary and without consideration, at the instance of a volunteer (citing authorities). But are the obligors in the bond in an attitude to claim the benefit of that rule? We think they are not. This bond or agreement under seal states that the consideration of it is the conveyance made to the obligors by Ezra Guard. By this recital they are estopped, and cannot say it was without consideration. *Trimble* v. *The State*, 4 Blackf. (Ind.) 435; *May* v. *Johnson*, 3 Ind. R. 449."

The case of *Fuller* v. *Artman, supra,* was a suit of an assignee to enforce specific performance of an option under seal, and is, therefore, a case in point. On its face it was recited that the option was in consideration "of one dollar and other valuable consideration, the receipt whereof is hereby acknowledged," though nothing had in fact passed. The opinion says: "The evidence (*i. e.,* that no valuable consideration had actually passed) was no doubt properly excluded. If admitted, it would have done violence to some elementary principle of the law of evidence bearing upon the credit and validity belonging to instruments in writing and under seal. The principles referred to may, perhaps, be embodied in a rule to the effect that while the mere presumption of a consideration which arises from the use of seals in the execution of the instrument is subject to rebuttal (Code Civ. Pro., sec. 840), the expression of a consideration in such instrument is not subject to contradiction for the purpose or with the effect of invalidating the instrument. *Murdock* v. *Gilchrist,* 52 N. Y. 246; *Rockwell* v. *Brown,* 54 N. Y. 213. The recital of a consideration in a deed is conclusive as to the fact that there was a consideration for the deed. *Grout* v. *Townsend,* 2 Den. (N. Y.) 335; *Murdock* v. *Gilchrist, supra.* The consideration actually paid or promised may be shown to have been other than that recited in the instrument, or the fact of payment of the consideration agreed upon may be contradicted in an action for its recovery, but the existence of a sufficient consideration when expressed in an instrument under seal is not subject to dispute."

As it seems to us, the rule would apply with greater force where the right of a third party to enforce the contract is involved.

Specific performance was decreed in *Matthews Slate Co.* v. *New Empire Slate Co., supra,* upon precisely these grounds.

The principle is applied uniformly to insurance cases where the policy contains a formal acknowledgment of the receipt of the premium upon the ground that this acknowledgment should prevent the insurer from averring and showing non-payment of the premium for the purpose of denying that the contract ever had any legal existence. Says the opinion in *Basch* v. *Humboldt, &c., Ins. Co.,* 35 N. J. Law. 429 : "What does this receipt, in its connection with the delivery of the instrument, import, if it does not mean that the payment of the premium is conclusively admitted to the extent that such payment is necessary to give vitality to the contract? Unless this be its meaning, it serves no legal office, for it does not mean that the money has been actually received. . . . This policy of insurance purports to have an effect immediate on delivery, founded on a paid-up consideration; it does not seem competent for the promisor to prove that the acknowledgment is not true, and that the contract never had any existence. . . . . The usual legal rule is that a receipt is only *prima facie* evidence of payment, and may be explained; but this rule does not apply when the question involved is not only as to the fact of payment, but as to the existence of rights springing out of the contract. With a view of defeating such rights the party giving the receipt cannot contradict it. An acknowledgment of an act done, contained in a written contract, and which act is requisite to put it in force, is as conclusive against the party making it as is any other part of the contract; it cannot be contradicted or varied by parol."

In a similar case, *Kendrick* v. *Life Ins. Co.,* 124 N. C. 315, 32 S. E. 728, 70 Am. St. Rep. 592, the court says: "The authorities are numerous and quite uniform that the acknowledgment in the policy of the receipt of the premium estops the company to contest the policy on the ground of non-payment of

the premium.   In so far as it is a mere receipt for money, it is only *prima facie,* like other receipts, and will not prevent an action to recover the money, if not in truth paid; but in so far as it is a part of the contract of insurance, it cannot be contradicted by parol to invalidate the contract, in the absence of fraud in procuring the delivery of the policy."   In support of the principle declared a long list of authorities are cited.

It seems to us clear, both upon reason and authority, that in this case Robertson should not be permitted to deny, certainly as to Watkins, who, in his dealing with Elam, undoubtedly relied upon the positive representation on the face of the contract in question, that he (Robertson) had received the consideration necessary to its validity and binding force.   As we view this case, it would be a denial of justice and a pernicious sanction of unfair dealing to hold that Robertson, who had, by his contract in writing, under seal, executed and delivered to Elam, reciting that it was made and executed for a valuable consideration received, bound himself not to withdraw his offer therein made to sell to Elam or his assigns the 496 shares of the capital stock of the Watkins-Cottrell Company until December 1, 1904, could, after Watkins had been shown the contract, and, relying upon its binding force and effect upon Robertson, before the time limit therein named had expired, accepted the offer and offered to pay the purchase price for the stock, defeat the very object and purpose of the contract by merely showing that the recital in the contract of the receipt of a valuable consideration was untrue.   Contracts or options of this character have, at this day, become in common use in the business world, and dealings had in reliance upon them would become very uncertain, risky and undesirable if such a contract, as a matter of law, may be converted into a snare and a delusion by permitting the party making it to withdraw from or

break it before it expires by its own terms, as though the contract were not under seal and did not contain a recital that a valuable consideration had been paid therefor. Safety and fair dealing in transactions of this character require that such contracts be regarded as sacred and as binding upon the parties intended to be bound thereby as other contracts which can only be defeated, impeached or avoided for fraud or illegality.

We are of opinion, therefore, that the court below should have refused appellees' instructions "A," "B" and "C" and given appellant's instructions Nos. 1, 2 and 3.

The refusal of the court to give certain instructions asked by appellant, predicated upon the agency of Elam for the sale of Robertson's stock in question, and submitting that question of fact to the jury, is assigned as error; but in the view we have taken of the case it is unnecessary to consider this assignment. Nor do we consider it expedient to express an opinion as to the weight of the evidence certified in the record, as the case, because of misdirection of the jury and the admission of improper evidence, has to be remanded for a new trial of the issue out of chancery, should the court deem it proper to submit again the issue to a jury.

The decree appealed from is reversed and annulled and the cause remanded to be further proceeded with, in accordance with the views expressed in this opinion.

*Reversed.*