## Richmond

## McKee v. Bunting, McNeal Real Estate Co., Inc.

### March 13, 1913.

### Absent, Keith, P.

1. EVIDENCE—*Consideration of Deed—Parol Evidence to Vary.*—The consideration clause in a deed conveying land is open to explanation, and, in an action by the grantor to recover the purchase price, or by the grantee to recover it back, parol evidence is admissible to show that the consideration actually paid or promised is other than that recited in the deed, or to contradict the recital in the deed that the consideration has been paid, but is not admissible to alter or contradict the legal import of the deed.

2. VENDOR AND PURCHASER—*Variance Between Contract and Deed—Action for Purchase Money—Evidence.*—A purchaser, by written contract, agreed to purchase of a land company, which had for sale a number of lots, three lots at the price of $3,000, and to erect thereon a dwelling house to cost not less than $4,100, and in the event of failure to erect the house to pay to the company the further sum of $550—"this amount being allowed for the erection of said building, notwithstanding I have a deed for said lots." The $3,000 was paid a few days thereafter and a deed of conveyance executed to the purchaser. The consideration recited in the deed as paid was $3,550. Both the contract and the deed contained the stipulation that no dwelling house should be built on any of the said lots to cost less than $2,500. The purchaser did not build the $4,100 house or any other house on the lots, and refused to pay the $550 additional (for which this action was brought), insisting that the contract to build the house was not a part of the consideration for the sale, but only one of the conditions of the sale which had been abandoned when the deed was executed, and that the deed was the exclusive and conclusive evidence of the terms of the purchase, and that the written contract of sale was not admissible in evidence.

   *Held:* The contract to build the $4,100 house or else pay the grantor $550 formed a part of the consideration of the sale; the contract was admissible in evidence; the covenants in the deed were not in lieu of nor a substitute for the provisions of the contract to

erect a $4,100 house, and having failed to erect the house, the purchaser was liable to the grantor for the $550.

3. Trial—*Variance—Amendments—Code, Section 3384.*—If a court is unable to give judgment in a case on account of a variance between the plaintiff's pleadings and his evidence, it ought to give the plaintiff leave to amend his pleadings in accordance with the provisions of section 3384 of the Code. This section applies as well to motions heard by the court as to jury trials. The statute is remedial and should be liberally construed, especially where the amendment will further the ends of justice and permit the controversy to be determined on its merits.

Error to a judgment of the Law and Equity Court of the city of Richmond in a proceeding by motion under section 3211 of the Code. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

This proceeding was instituted in February, 1911, by notice and motion under section 3211 of the Code, to recover the sum of $550 alleged to be due the Bunting, McNeal Real Estate Company from Mrs. Charles I. McKee under an offer and acceptance for the purchase and sale of certain lots, as evidenced by a writing dated April 5, 1906, of which the following is a copy, excepting formal parts:

"I, the undersigned, Mrs. Charles I. McKee, of Richmond, in the State of Virginia, hereby make application to purchase the following real estate situated near the city of Richmond, in the county of Henrico, State of Virginia, known and described as follows:

"Lot No. 33-34-35. Each Lot being 25 x 120 feet, as shown on the plat of the property of the Bunting, McNeal Real Estate Company, Inc., known as Boulevard Residence Park, of record in the county clerk's office of Henrico county, Virginia, and I promise to pay the said Bunting, McNeal Real Estate Co., Inc., for said lot the sum of three thousand dollars in payment as follows: On delivery of

deed three thousand dollars cash, and I do hereby agree to erect on said lot a dwelling house to cost not less than forty-one hundred dollars, as soon as the Bunting, Mc-Neal Real Estate Co. can assure me sewerage, water and electric or gas lights for use of said dwelling, and if I fail to erect said house as stated, I will pay to said Bunting, McNeal Real Estate Co., a further sum of five hundred and fifty dollars, this amount being allowed for the erection of said building, notwithstanding I have a deed for said lots   .   .   .

"When the entire purchase price is paid a deed with general warranty is to be executed with the following covenants:

"First: That the property is not to be sold, rented or otherwise disposed of to persons of African descent.

"Second: That no liquor is to be sold on the property.

"Third: That all buildings shall be erected on a line fifteen (15) feet from the street line on the Boulevard.

"Fourth. That no use shall be made of the lot or any part thereof which would constitute nuisance or injure the value of any of the neighboring lots.

"Fifth: That no houses shall be built on any lot fronting on the Boulevard to cost less than twenty-five hundred dollars ($2,500), or on Colonial avenue to cost less than fifteen hundred dollars ($1,500), but any person may use two or more lots, placing one residence thereon.

"Sixth: That the company reserves the right to lay and place, or authorize the laying or placing of electric or other street car tracks, sewer, gas, water and water pipes, electric conduit or pipes, telegraph, telephone or other electric poles, or any work or instrument of public utility on the alleys or Colonial avenue without compensation to any lot owner.

"This contract is made with the distinct understanding and agreement that the Bunting, McNeal Real Estate Company, Inc., guarantees the following improvements:

"That all lots facing on the Boulevard shall have a granolithic sidewalk, also all lots on Colonial avenue shall have a granolithic sidewalk, and trees planted on said Colonial avenue without cost to purchaser.

"This application is not to become binding upon the Bunting, McNeal Real Estate Company, Inc., until it has been accepted by said company."

The said lots were conveyed by the Real Estate Company to Mrs. McKee by a deed dated April 6, 1906, of which the following is a copy:

"This deed, made this 6th day of April, 1906, between the Bunting, McNeal Real Estate Company, Inc., a corporation existing under the laws of the Commonwealth of Virginia, party of the first part, and Mrs. Mattie E. McKee, of the city of Richmond, State of Virginia, party of the second part.

"Witnesseth: That for and in consideration of the sum of thirty-five hundred and fifty ($3,550.00) dollars, the receipt of which is hereby acknowledged, the said Bunting, McNeal Real Estate Company, Inc., doth grant with general warranty unto the said Mrs. Mattie E. McKee the following real estate situated in Tuckahoe magisterial district of the county of Henrico, State of Virginia, adjacent to the corporate limits of the city of Richmond, viz.: Lots Nos. 33-34-35 on the plat of the property of the Bunting, McNeal Real Estate Company, Inc., known as 'Boulevard Residence Park,' duly recorded in the county court clerk's office of Henrico county, in plat book No. 8, page 101, and bounded as follows, beginning at the northwest intersection of the Boulevard and Beverly street, and running north seventy-five (75) feet along the western line of said Boulevard, thence running west between parallel lines one hundred and twenty (120) feet to any alley fifteen (15) feet wide, thence south along said alley seventy-five (75) feet, thence east one hundred and twenty (120) feet to the point of beginning.

"Being a part of the real estate which was conveyed to the said Bunting, McNeal Real Estate Company, Inc., by deed from Alice B. Williams and her husband, David L. Williams, bearing date on the 27th day of November, 1905, and recorded in the clerk's office of the Henrico county court in deed book 174-B, page 205, to which deed and plat reference is hereby made.

"The above property is sold subject to the following conditions to be performed by the said party of the second part, her heirs, personal representatives or assigns, as hereinafter set forth; that is to say:

"First: That the property is not to be sold, rented or otherwise disposed of to persons of African descent.

"Second: That no liquor is to be sold on the property.

"Third: That all buildings shall be erected on a line twenty (20) feet from the street line, on the Boulevard.

"Fourth: That no use shall be made of the lot sold or any part thereof which would constitute a nuisance.

"Fifth: That no dwelling house shall be built on any of the said lots to cost less than twenty-five hundred ($2,-500.00) dollars.

"Sixth: That the company reserves the right to lay and place, or authorize the laying and placing *or* electric or other street car tracks, sewer, gas and water pipes, electric conduit or pipes, telegraph or other electric poles or any work or instrument of public utility on the alley in the rear of said lots without compensation to owner of said lot.

"The said party of the first part covenants that they have the right to convey the said land to the party of the second part; that they have done no act to encumber the said land; that the party of the second part shall have quiet possession of said land, free from all encumbrances, and that they, the said party of the first part, will execute such further assurance of the said land as may be requisite.

"Witness the following signatures and seals:
"BUNTING, McNEAL REAL ESTATE CO., INC.,
   "By J. G. McNEAL, Pres.      ` (Seal)
     "J. L. BUNTING, Sec'y & Treas.  (Seal)
       "MRS. MATTIE E. McKEE.  (Seal)"

The secretary and treasurer of the Real Estate Company, who was permitted to testify over the objections of Mrs. McKee, stated that "his company held the lots mentioned in the contract of purchase at $3,950.00, from which $400.00, as a discount of about 10 *per cent.*, was deducted for cash, making the consideration for the lots $3,550.00; that the contract of purchase was executed on April 5, 1906, and the deed prepared the next day, April 6th, but was not acknowledged and delivered for several days afterwards, as the offices of the company were in Norfolk; that the deed recites the payment of the consideration of $3,-550.00, but that only $3,000.00 was paid at the time the deed was delivered. As to the said $550.00, the contract of purchase provided as follows: 'And I do hereby agree to erect on said lot a dwelling house to cost not less than $4,100.00, as soon as the Bunting, McNeal Real Estate Company can assure me sewerage, water and electric or gas lights for use of said dwelling, and if I fail to erect said house as stated, I will pay to said Bunting, McNeal Real Estate Company a further sum of $550.00, this amount being allowed for the erection of said building, notwithstanding I have a deed for said lots.' That the plaintiff was a real estate company interested in having houses built upon the lots it might sell, in order to enhance the value of its other lots. That in the summer of 1910 he had notified Mr. McKee, the husband of the defendant, who was acting for her in these matters, that sewerage, water and lights could be assured her by the company, and in January, 1911, he served a written notice on her to that effect; that the defendant had failed to erect the dwell-

ing mentioned in said contract of purchase and had sold said lots at an advanced price; that he, the witness, thought that the defendant should pay this additional sum of $550.00."

The whole matter of law and fact having been submitted to the trial court, it rendered judgment in favor of the Real Estate Company for the sum sued for. To that judgment this writ of error was awarded.

*Wyndham R. Meredith,* for the plaintiff in error.

*George J. Hooper,* for the defendant in error.

BUCHANAN, J. (after making the foregoing statement), delivered the opinion of the court.

There is no pretence that Mrs. McKee had erected upon the land conveyed to her a dwelling house costing $4,100, as she had the option to do under her offer of purchase, or that she had paid the $550 which she undertook to pay in the event she did not erect such dwelling house; or that she had paid more than $3,000 of the $3,550 which is stated in the deed as the consideration to be paid and as having been paid by her.

It seems to be well settled in this State, and generally in this country, that the consideration clause in a deed conveying land is open to explanation, and that in an action by the grantor to recover the purchase price, or by the grantee to recover it back, parol evidence is admissible to show that the consideration actually paid, or promised, is other than that recited in the deed, or to contradict the recital in the deed that the consideration has been paid; but it is not admissible to alter or contradict the legal import of the deed. *Harvey, &c.,* v. *Alexander,* 1 Rand. (22 Va.) 219, 10 Am. Dec. 519; *Trout* v. *N. & W. Ry. Co.,* 107

Va. 582, 59 S. E. 394; *Watkins* v. *Robertson*, 105 Va. 569, 54 S. E. 33, 5 L. R. A. 1194, 115 Am. St. Rep. 880; 2 Minor on Real Prop., sec. 1158; 2 Dev. on Deeds (3rd ed.), secs. 822, 823, 830; Browne on Parol Ev., sec. 92; 2 Sugden on Vendors (8th Am. ed.), p. 338, note b, where many cases are cited; 4 Wigmore on Ev., sec. 2433; Beach on Mod. Law of Contracts, sec. 275; Bishop on Contracts, sec. 386; 2 Page on Contracts, secs. 1203, 1204; *Hebbard* v. *Haughian*, 70 N. Y. 54, 58-59.

As we understand the argument of the counsel for Mrs. McKee, he does not controvert the rule as above stated, but his contention is that the provision in the executory contract of sale for the erection of a dwelling house on the lots to cost not less than $4,100 was not a part of the consideration, but was one of the conditions upon which the lots were sold; and that since such condition was not carried into the deed the contract between the parties was altered to that extent, and the deed became "the exclusive and conclusive evidence of the terms of purchase, and prohibits the reading into the deed" that provision of the contract which the parties themselves abandoned. And he further insists that the provision as to the erection of the $4,100 dwelling house contained in the contract of sale was not only omitted from the deed, but that the deed contains another provision in lieu thereof, viz.: "That no dwelling house should be built on any of the said lots to cost less than twenty-five hundred ($2,500.00) dollars"; and that the contract of sale was, therefore, not admissible in evidence since it contradicted the express conditions of the deed.

It clearly appears from a comparison of the two writings that that condition or covenant in the deed was not in lieu of or a substitute for the provision as to the erection of a $4,100 dwelling house. On the contrary, the contract of sale provides that "when the entire purchase price is

paid a deed with general warranty is to be executed with the following covenants  *  *  *"  Among these covenants is one (the fifth) that no dwelling house shall be built on any lot fronting on the Boulevard (as do the lots in question) costing less than twenty-five hundred dollars. That covenant was, therefore, not only not in lieu of but had nothing to do with the provision in the consideration clause of the contract of sale providing how the purchase price might be paid.

As we understand and construe that contract, the provision in the consideration clause for the erection of a $4,100 dwelling house was a benefit which would enure to the vendor, and was therefore a part of the consideration it was to receive for the property. The vendor was a real estate company interested in having houses built upon lots sold, and such improvements would enhance the value of its other lots. Mrs. McKee had the option, under the contract, to build such a house; but if she did not, she bound herself to "pay said Bunting, McNeal Real Estate Company *a further sum of five hundred and fifty dollars, this amount being allowed for the erection of said building, notwithstanding I have a deed for said lots.*  *  *  *"

That the real consideration for the lots purchased and sold was $3,550 is clear, we think, from the language of the consideration clause in the contract; but the language of the deed leaves no room for doubt on that point, for it declares that the conveyance was made "for and in consideration of the sum of thirty-five hundred and fifty ($3,-550) dollars"; and the evidence of the secretary of the real estate company shows that the $3,000, which the contract of sale provided was to be paid at that time, was paid, leaving $550 of the consideration unpaid. That sum was not payable when the deed was delivered, which was only a few days after contract of sale was entered into, and it did not become payable until the real estate company

notified Mrs. McKee that it could assure water, sewerage and electric lights for the use of the dwelling house. This notice was not given until January, 1911. When that notice was given it became the duty of Mrs. McKee either to erect the $4,100 dwelling house or to pay the said sum of $550, notwithstanding, as the contract provides, she had "a deed for said lots." She declined or failed to erect the dwelling house, and the $550 at once became payable in money.

But if it were true, as insisted by the counsel of Mrs. McKee, that when the deed was executed by her vendor and accepted by her the contract for sale was merged for all purposes, and that the rights of the parties thereafter rested solely in the deed, the evidence of the secretary of the company, which was clearly admissible, showed that only $3,000 of the $3,550, the consideration stated in the deed, had been paid. This being so, it would leave Mrs. McKee owing $550 on the purchase price of the lots, with interest thereon from the date or delivery of the deed. If the court could not have rendered judgment for that sum because of a variance between the plaintiff's pleading and its evidence, the court ought to, and no doubt would, have given the plaintiff leave to amend its pleadings in accordance with the provisions of section 3384 of the Code. That section applies to motions heard by the court as well as to jury trials. *Carter* v. *Grant's Admr.*, 32 Gratt. (43 Va.) 769, 777-8. It is remedial and should be construed liberally (*Langhorne* v. *Richmond City*, 91 Va. 364, 367, 22 S. E. 357), especially where the amendment will further the ends of justice and permit the controversy to be determined on its merits. 3 Am. & Eng. Enc. of L. & P., 617, 744-748.

The plaintiff's claim, whether evidenced by the contract of sale or by the deed, was the unpaid purchase price due from Mrs. McKee on the lots sold her. The evidence in

the case, excluding the contract of sale, showed beyond question that there was still a balance of $550 of purchase money due from Mrs. McKee, and it is hard to see how we could deny the real estate company's right to recover and at the same time satisfy the demands of common justice. It is difficult to conceive of a case in which a more palpable wrong would be done, or a worse example set, by suffering an agreement to be broken with impunity.

It is clear to us that the trial court did not err in overruling Mrs. McKee's motion to exclude the contract of sale, and that upon the whole case there is no error in the judgment complained of to the prejudice of the plaintiff in error.

*Affirmed.*