831 F.2d 519
 Graham HENDERSON, Plaintiff-Appellant,
and
United States of America, for the Use of J.E. Liesfeld
Contractor, Inc.; United States of America, for
the Use and Benefit of Capital Masonry
Corp., Plaintiff,
v.
UNITED STATES FIDELITY AND GUARANTY COMPANY, Defendant &
Third Party Plaintiff-Appellee,
and
Central Construction Corporation; Union Fidelity Insurance
Company of New York; Craig A. Knepp; Linda N. Knepp;
Emanuel Jr. Henderson; Diane Green-El, Dr.; William L.
Henderson; Carolyn Henderson; Sally Henderson; John
Billingsley, Jr., Defendant.
 No. 86-1259.
 United States Court of Appeals,
Fourth Circuit.
 Argued April 10, 1987.
Decided Oct. 23, 1987.
 
 Thomas Tillman Hassell, Jr., Richmond, Va., for appellant.
 Randolph Porter Tabb, Jr. (Taylor, Hazen & Kauffman, Richmond, Va., on brief), for appellee.
 Before WINTER, Chief Judge, WIDENER, Circuit Judge, and HAYNSWORTH, Senior Circuit Judge.
 WIDENER, Circuit Judge:
 
 
 1
 Graham Henderson appeals from an adverse judgment in the district court holding him liable under a master surety agreement with United States Fidelity & Guaranty Company. While we agree with the district court that there was adequate consideration to support the parties' bargain, we disagree with the district court's construction of the contract's termination clause. Accordingly, we reverse and remand.
 
 
 2
 The facts in this case are undisputed. Central Construction Corporation (Central) contracted with the United States government to provide labor and materials in the construction of a post office in Chesterfield County, Virginia. On July 20, 1984, United States Fidelity and Guaranty Company (USF & G) issued performance and payment bonds on behalf of Central. Subsequently, USF & G obtained several parties' signatures, including Graham Henderson's, on a Master Surety Agreement dated October 19, 1984.
 
 
 3
 Central, the general contractor on the project, subcontracted much of the project's work to various subcontractors, including J.E. Liesfeld Contractor, Inc. (Liesfeld). A disagreement arose concerning performance and payment. Consequently, Liesfeld filed suit in the district court against Central and its bonding company, USF & G.
 
 
 4
 USF & G then filed a third party complaint against the individuals who had executed USF & G master surety agreement. This appeal involves only USF & G's action against Graham Henderson.[1]
 
 
 5
 The district court held that Henderson and others were jointly and severally liable to USF & G for its liability to Liesfeld. This appeal followed.
 
 
 6
 Henderson attacks the judgment on two grounds. First, he claims that there was inadequate consideration to support his obligation under the bond. Second, Henderson claims that he successfully relieved himself of liability as an indemnitor on bonds already in place when he sent USF & G a written notice of termination on March 11, 1985.
 
 
 7
 We are of opinion that Henderson's argument that there was no consideration for his agreement is without merit. In Virginia, whose law applies in this case, a contract under seal imports a valuable consideration. Wilson v. Butt, 168 Va. 259, 269, 190 S.E. 260, 264 (1937); Watkins v. Robertson, 105 Va. 269, 279, 54 S.E. 33, 39 (1906); see 4B Michie's Jurisprudence of Virginia and West Virginia, Contracts Sec. 31, at 43 & n. 4 (1986). There is no question that the master surety agreement involved here is a contract under seal. The last part of the agreement provides:
 
 
 8
 CAUTION!
 
 
 9
 READ BEFORE SIGNING!
 
 
 10
 By executing this AGREEMENT you are bound to SURETY with respect to all BOND(S) executed, provided or procured or to be executed, provided or procured by SURETY in behalf of PRINCIPAL as defined on Page 1.
 
 
 11
 Signed, Sealed and Dated this ____ day of ____ 19__ (emphasis added).
 
 
 12
 When Henderson signed this agreement, Virginia statute law treated the writing recognizing a seal with the same force as if it were actually sealed by him. Virginia Code Sec. 11-3.
 
 
 13
 As noted, consideration is presumed from an instrument under seal unless there is proof to the contrary. See Watkins, 105 Va. at 279, 54 S.E. at 36. The only evidence concerning consideration was elicited by USF & G. Henderson testified that he was vice-president of operations for Central and a minority shareholder in Central at the time he signed the surety agreement. This evidence does not present proof contrary to any purported consideration but, instead, provides a basis for finding actual consideration for the surety agreement as the district court in fact did, based on Henderson's obvious interest in the continuing operation of the post office project. Accordingly, we reject Henderson's claim that there was not a sufficient consideration for his promise.
 
 
 14
 The other question in the case is the effect to be given Henderson's March 11, 1985 written notice of termination of his indemnity. USF & G received this notice on March 18, 1985, as evidenced by a certified mail return receipt. We must decide whether this notice terminated Henderson's liability under the pertinent provisions of the master surety agreement which provide as follows:
 
 
 15
 XI (A) There shall be no waiver, modification or change of the terms of this AGREEMENT without the written approval of an officer of SURETY:
 
 
 16
 (B) this AGREEMENT may be terminated as to any UNDERSIGNED upon written notice given to SURETY by such undersigned by Registered or Certified Mail addressed to SURETY at its Home Office in Baltimore, Maryland:
 
 
 17
 (C) such termination shall not be effective until thirty (30) days after receipt of the said written notice by SURETY;
 
 
 18
 (D) such termination shall not relieve any UNDERSIGNED from liability to SURETY arising out of BOND(S) executed, provided or procured by SURETY in behalf of PRINCIPAL in reliance on this AGREEMENT prior to such termination, nor shall it affect, in any manner, liability of any of UNDERSIGNED as do not give the notice required herein.
 
 
 19
 USF & G initially takes the position that paragraph XI(A) of the contract requires that any release of Henderson was required to have been approved in writing by an officer of USF & G. We disagree. First, it is clear that paragraph XI(A) applies only to waivers, modifications, or changes of the terms of the agreement, none of which situations is involved here. Henderson's termination notice was made pursuant to an already existing paragraph in the agreement, paragraph XI(B), which permitted Henderson to terminate by giving USF & G written notice by registered or certified mail addressed to its home office in Baltimore, Maryland. There was not any "waiver, modification or change." Also, if paragraph XI(A) were construed to require a written agreement by both sides to terminate, the termination clause would become a nullity since the same result could be reached by the parties entering into a separate contract. We decline to adopt such a restrictive requirement here in light of paragraph XI(B)'s plain language.
 
 
 20
 USF & G's second argument is that even if Henderson's notice of termination was effective without USF & G's approval, it does not relieve Henderson from liability on bonds executed in reliance on the master surety agreement. See paragraph XI(D). The district court apparently based its decision that Henderson's termination notice was ineffective on this point. However, it is clear that USF & G could not have relied on Henderson's indemnity agreement in executing the bonds in issue here. These bonds were issued almost three months prior to the master surety agreement. Accordingly, paragraph XI(D), which, without explanation, necessarily presumes that the surety agreement is entered into prior to, or substantially contemporaneously with, the issuance of the bonds, is inapplicable here.
 
 
 21
 We hold that while there was sufficient consideration to support Henderson's indemnification promise under this contract, Henderson's notice of termination effectively released him from liability thirty (30) days after it was received by USF & G. Thus, Henderson's obligations under this agreement terminated on April 17, 1985.
 
 
 22
 The judgment of the district court is reversed, and the case is remanded for further proceedings consistent with this opinion.
 
 
 23
 REVERSED AND REMANDED.
 
 
 
 [1]
 Liesfeld and Central negotiated a settlement below. Additionally, USF & G was unable to obtain service of process on some of the third party defendants and received a default judgment against others. The judgment against Henderson as third party defendant is the only issue before us